## JANUARY, 1912.

### J. K. BAILEY v. THE STATE.

No. 1296.   Decided January 24, 1912.

Rehearing denied March 13, 1912.

**1.—Murder—Evidence—Declarations of Defendant—Post Cards—Motive.**

Where, upon trial of murder, the State claimed that defendant's motive in committing the alleged homicide was to secure the life insurance on his wife's life, and that he indiscriminately mingled arsenic in coffee of which his wife, the deceased, and others drank, and the case was one of circumstantial evidence, there was no error in admitting testimony that the defendant had proposed to write to some women who were advertising for husbands and that thereupon he received a number of post cards from them which were also admitted in evidence.

**2.—Same—Evidence—Identification.**

Upon trial of murder, by mingling arsenic with coffee, there was no error in admitting the testimony of a druggist that he had sold, about a week before the poisoning, some commercial arsenic to a person whom he could not identify, but whom he described, the testimony of the State showing that defendant was in the town where the arsenic was sold about the time it was sold to the man whom the witness described, and which description corresponded somewhat with defendant; it having also been shown that defendant made the coffee in which similar arsenic was found.

**3.—Same—Evidence—Voluntary Statement of Defendant—Grand Jury.**

Where, upon trial of murder, it was shown that the defendant made a voluntary written statement before the grand jury after he was suspected of the murder, and which was with reference thereto, the same did not come within the scope of the statute relating to extra judicial confessions and was admissible in evidence, he having been duly warned.

**4.—Same—Evidence—Expert Analysis—Arsenic.**

Where, upon trial of murder, the defendant objected to the expert analysis made of the mixture in which arsenic was contained and of which deceased had drank and died, on the ground that it was not shown that the mixture had been delivered to the chemist who had made the analysis; and it appeared that the testimony showed that it was the identical mixture or coffee from which deceased drank and from which she died, there was no error.

**l    ...ie—Imputing Crime to Another—Evidence.**

Where, upon trial of murder, the question asked defendant's witness corroborated the State's witness and did not in any way impeach his testimony or tend to connect another with the crime, there was no error in excluding it.

**6.—Same—Evidence—Harmless Error.**

Where, upon trial of murder, the question asked a State's witness whether his sympathies were not entirely with the defendant, etc., which he answered in the negative, while probably improper, was harmless error, if any. There was no reversible error.

**7.—Same—Evidence—Habits of Defendant.**

Where, upon trial of murder, the theory of the State was that the defendant had poisoned the deceased in an attempt to poison his wife to get the insurance on her life, there was no error in admitting testimony that defendant had said that he had collected certain insurance money on account of an accident; as this would tend to show that defendant had a mania for insurance money; the case being one of circumstantial evidence.

**8.—Same—Verdict—Practice—Statutes Construed.**

Upon trial of murder, there was no error in the action of the court that when the jury returned a verdict which did not state the degree of murder in retiring them to find the degree of murder and so state in their verdict; whereupon the jury returned a verdict of murder in the first degree. Article 712, Penal Code.

**9.—Same—Motion for New Trial—Bill of Exceptions.**

A bill of exceptions, presenting the evidence on a motion for new trial, must be filed during the term of court, and bills presented subsequent to the adjournment of court, can not be considered on appeal. Following Probest v. State, 60 Texas Crim. Rep., 608.

**10.—Same—Charge of Court—Express and Implied Malice—Murder by Poison —Statutes Construed.**

Under article 711, Penal Code, all murder committed by poison is murder in the first degree, and where the indictment charged such homicide, and the evidence tended to sustain it, although it appeared that defendant intended to poison another and not deceased, but that he showed a reckless disregard of human life, there was no error in the court's charge that murder in the first degree in this case could be predicated upon either express or implied malice. Following Tooney v. State, 5 Texas Crim. App., 189, and other cases.

**11.—Same—Charge of Court—Weight of Evidence—Words and Phrases.**

Where, upon trial of murder, by means of arsenic poisoning, the court instructed the jury that if they believed from the evidence, beyond a reasonable doubt, that such poisoning was the act of another and not that of the defendant, especially naming defendant's wife, to acquit defendant, the same was not on the weight of evidence, and the omission of the words "wife of defendant" after her name could not have misled the jury. Following Blocker v. State, 55 Texas Crim. Rep., 30.

**12.—Same—Charge of Court—Confession.**

Upon trial of murder, where defendant's voluntary statement was introduced by the State, there was no error in the court's charge that such statement must be taken together, and that the State is bound by all of it, unless the State has shown by the evidence that it is untrue. Following Combs v. State, 52 Texas Crim. Rep., 613, and other cases.

**13.—Same—Limiting Evidence—Charge of Court.**

Where, upon trial of murder by arsenic poisoning mingled with coffee, the evidence showed that defendant's wife and others also drank of the coffee from which deceased died, and that they became very ill, the court properly limited such evidence to the intent of defendant.

**14.—Same—Charge of Court—Arsenic Poisoning.**

Where, upon trial of murder by means of arsenic poisoning, the evidence was clear that the death of deceased was occasioned by arsenic, there was no error in failing to instruct the jury that if deceased came to his death from lead or zinc poison, to acquit.

**15.—Same—Jury and Jury Law—Opinion of Juror.**

Where, upon trial of murder, the defendant claimed after conviction that one of the jurors had expressed an opinion as to the guilt of defendant, and it appeared that his counsel was informed of this fact before the jury retired to consider their verdict, but raised no objection until after the verdict was rendered, there was no error; besides, this issue was tried and decided by the court adversely to defendant, and the bill of exceptions was not filed until after adjournment.

**16.—Same—Newly Discovered Evidence—Result.**

Where the alleged newly discovered evidence attempted to show that defendant's wife, some two years before the homicide, said that she had a little arsenic in her possession, but it appeared from the record that defendant was with his wife on this occasion, it was not newly discovered evidence; besides, the record showed that defendant's wife drank of the alleged poisoned coffee which very nearly caused her death, etc., and that said alleged newly discovered evidence would probably not have produced a different result upon another trial.     ₒ

**17.—Same—Newly Discovered Evidence.**

Where part of the alleged newly discovered evidence would not have been admissible, and a portion of it was such that defendant must have had knowledge of it, and still another portion was simply of an impeaching character, there was no error in overruling a motion for new trial on this ground.

**18.—Same—Sufficiency of the Evidence.**

Where, upon trial of murder by means of mingling arsenic in coffee, the evidence sustained the conviction, there was no error.

**19.—Same—Confessions—Statutes Construed.**

Evidence voluntarily given before a grand jury, in an effort to prevent an indictment, does not come within the provisions of article 790, Code Criminal Procedure, as amended.

**20.—Same—Charge of Court—Confessions.**

Where, upon trial of murder, the State introduced a written statement made by the defendant before the grand jury, there was no error in the court's charge that the whole of said statement and evidence of the defendant as given before said grand jury and admitted in evidence, must be taken together and that the State is bound thereby, unless it has shown the same to be untrue, and that such statements are to be taken into consideration in connection with all the other facts and circumstances of the case. Overruling Wallace v. State, 66 S. W. Rep., 1102. Approving Pratt v. State, 59 Texas Crim. Rep., 635.

**21.—Same—Charge of Court—Limiting Testimony.**

Where, upon trial of murder by means of arsenic poisoning, the evidence showed that defendant's wife and others besides the deceased suffered injury from drinking the coffee in which the arsenic was mingled, there was no error in the court's charge limiting said testimony to the question of defendant's intent. Following Thornley v. State, 36 Texas Crim. Rep., 118, and other cases.

**22.—Same—Bill of Exceptions—Statement of Facts—Motion for New Trial.**

When evidence is taken on motion for new trial and is preserved by bill of exceptions which is filed after adjournment, it stands on the same footing with a statement of facts containing such evidence which is filed after adjournment, and neither can be considered on appeal. Following Black v. State, 41 Texas Crim. Rep, 185.

**23.—Same—Circumstantial Evidence—Rule Stated.**

Where the case is one of circumstantial evidence, the mind seeks to explore every possible source from which light, however feeble, may be derived, and no definite line of demarkation can be drawn with regard to facts proximate and remote. Following Noftsinger v. State, 7 Texas Crim. App., 301, and other cases.

**24.—Same—Practice on Appeal—Rehearing.**

Matters which are not raised by bill of exceptions or ground in the motion for new trial can not be considered in a motion for rehearing. Following Flournoy v. State, 57 Texas Crim. Rep., 88, and other cases.

Appeal from the District Court of Erath. Tried below before the Hon. W. J. Oxford.

Appeal from a conviction of murder in the first degree; penalty, confinement in the penitentiary for life.

The opinion states the case.

*Chandler & Pannill,* for appellant.—On question of admitting evidence of sale of arsenic, in not tending to fix guilt of defendant: Runnels v. State, 77 S. W. Rep., 460; Darden v. State, 84 S. W, Rep., 507; Morrissey v. Ingram, 111 Mass., 63; Caddell v. State, 129 Ala., 157; State v. Campbell, 17 Ala., 566.

On question of admitting defendant's statement before grand jury: Wood v. State, 22 Texas Crim. App., 431; Fry v. State, 58 Texas Crim. Rep., 169, 124 S. W. Rep., 920; Robertson v. State, 111 S. W. Rep., 741; Young v. State, 54 Texas Crim. Rep., 417, 113 S. W. Rep., 276; Jenkins v. State, 131 S. W. Rep., 542; Burton v. State, 62 Texas Crim. Rep., 402, 137 S. W. Rep., 1145.

On the question of charge of court on defendant's statement before grand jury, the same not containing exculpatory testimony: Wallace v. State, 66 S. W. Rep., 1102; Barnes v. State, 81 S. W. Rep., 736.

On question of court's charge in limiting testimony of injury to other persons by drinking alleged poisonous mixture: Hall v. State, 21 S. W. Rep., 368; Hudson v. State, 28 Texas Crim. App., 323; Davidson v. State, 22 Texas Crim. App., 372; Naverrete v. State, 40 S. W. Rep., 792; Rice v. State, 94 S. W. Rep., 1032; Pannell v. State, 54 Texas Crim. Rep., 498, 113 S. W. Rep., 537; Harrolson v. State, 60 Texas Crim. Rep., 534, 132 S. W. Rep., 783; Lewis v. State, 58 Texas Crim. Rep., 351.

On question of court's failure to consider bill of exceptions in regard to the testimony heard on motion for new trial: Wallace v. State, 97 S. W. Rep., 1050.

On question of juror expressing opinion: Sewell v. State, 15 Texas Crim. App., 56; Long v. State, 10 Texas Crim. App., 186; Washburn v. State, 31 Texas Crim. Rep., 352; Hughes v. State, 60 S. W. Rep., 562.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—Appellant was indicted by the grand jury of Erath County, charged with murder, it being alleged that he committed the offense by mixing and putting arsenic in coffee. When tried he was convicted and his punishment assessed at confinement in the penitentiary for life.

The State relied on circumstantial evidence. It showed by Ulpin

Holt, a druggist at Stephenville, that about a week before the death of J. A. Alexander he sold a nickel's worth of commercial arsenic to a young man, not as tall as the witness. He said he was not able to identify the defendant as the man to whom he sold the arsenic, could not say that defendant even looked like the man. Sheriff Cox testified he had occasion to summon defendant before the grand jury about a week before Mr. Alexander's death, and that he saw defendant in Stephenville about that time. It is shown that defendant and his wife were keeping house for the deceased and his family, and that on the morning of the alleged poisoning he was the first to get up and made the fire in the stove and made the coffee. That at breakfast that morning deceased, his son, Henry Alexander, appellant's wife and appellant took coffee, none of the others present at the breakfast table drinking coffee. Deceased, his son Henry Alexander, and appellant's wife, after drinking the coffee became violently ill, and the elder Alexander died in about four hours. Those who did not drink coffee were not affected. Two doctors were called in to attend the sick, and they administered the same character of medicine to deceased, his son, appellant and his wife, all claiming to be sick. The doctors by their testimony say deceased died from the effects of the poison; that the son, Henry Alexander, and appellant's wife were violently and dangerously ill from the effects of drinking the coffee. Their testimony would indicate that appellant was not seriously affected, and some of the witnesses say that appellant poured coffee out in his saucer but did not drink it, while other witnesses testify that he was affected in the same way as his wife and Henry Alexander. Mrs. Alexander, at the suggestion of Dr. Farmer, poured a part of the coffee in a bottle, and gave to him the two coffee pots used by the family. Dr. Farmer carried these pots and the coffee in the bottle to Prof. Needham; a chemist at Fort Worth, who testified that he received the pots and coffee from Dr. Farmer and they had been in his possession since that time and kept locked up. That he made a thorough and scientific analysis of the coffee in the pots and in the bottle. He found the coffee in the bottle to contain arsenic, and found arsenic in the coffee in the blue enameled coffee pot. The witness then exhibited to the jury the contents of the blue enamel pot, calling attention to particles of what he termed or named as arsenic, stating to the jury: "Here is some of it. Here is some. There is a whopper; here is more," etc. "You can see that for yourself." "There's another." "There are many of them visible to the eye." "All that is arsenic." "There is an immense amount of it in there." "See, there is more of it." "You can see them on the edge of the coffee pot." This was the pot the witnesses say in which the coffee was made that deceased and the others drank.

As a motive for the crime, the State proved that about a year before this appellant had taken out a policy of insurance on the life of his wife, payable to himself. That he had signed two applications, one for himself, for $1,000 on his life payable to his wife, and one on the life

of his wife for the same amount payable to himself. That he carried the applications to a doctor who signed the health certificate, without examination of the wife, he being the family physician. The policies were issued and found in appellant's trunk after deceased's death, the evidence not showing that his wife knew that a policy had been obtained.

1. This is a sufficient statement of the evidence to render intelligible the discussion of the bills of exception in the record. Eugene Dumas testified that prior to the arrest of defendant he had worked with defendant with the road working crew, and while at such work defendant had said that he had a book or catalogue with some mighty pretty pictures in it of women advertising for husbands, and had said, "Let's write to some of them." The State then introduced six post cards found in appellant's trunk written by ladies from Clay Center, Ohio, Greensburg, Ind., Brawley, Cal., and Temple, Maine, addressed to J. K. Bailey, Dublin, Texas. To the introduction of these cards defendant objected, because said post cards had not theretofore been identified and because that it was not shown that the same were ever received by the defendant nor had been in his possession and because no sufficient predicate had been laid for the introduction of said post cards in evidence, and that said cards were irrelevant and immaterial to any issue in the case and could throw no light on any of the issues in said case and were prejudicial to the rights of the defendant and could only be used for the purpose of prejudicing the jury against him and because that from said post cards no reasonable or just conclusion could be drawn of any bad conduct or bad motive on the part of the defendant. The court in approving the bill stated that Henry Alexander testified he had got each of the post cards from defendant's trunk subsequent to his arrest, and this statement is borne out by the evidence. The cards being addressed to appellant, found in his possession, postmarked at the several points named, and signed by ladies, under the theory of the State that appellant had taken out an insurance policy on the life of his wife the year previous, and it was his purpose to poison his wife, as a circumstance it was permissible to show that he, a married man, was in correspondence with various unmarried ladies. It may have been entitled to but little weight, but its weight is for the jury. In a case of circumstantial evidence where it is shown that three persons are poisoned, one of whom was appellant's wife, it is permissible to show motive by isolated circumstances, if the jury should find that appellant was the person who placed the arsenic in the coffee pot.

2. The appellant also objected to the State being permitted to prove by the witness Holt: "All I remember is that about a week before this poisoning in the Alexander family I made a sale of some arsenic along in the first part of the week, and this was also the week before Sheriff Cox came to the store and had a talk with me about the sale and the matter of the poisoning. I think Cox came in in the latter part of the next week after I made the sale and asked me about it. I did make a

sale of some arsenic at the time I mentioned and that is as near as I can fix the date of the sale. The amount sold was a nickel's worth of commercial arsenic. This is a crude arsenic and is a cheap article and about one-fifth the price of the other grade and a nickel's worth in quantity being about a half handfull. The person who came in to purchase the arsenic was standing by when I weighed it out, and as I was doing so and had about half of it weighed he said that was enough. I told him that was not a nickel's worth, and to this he said he didn't care, that that much was all he wanted. The man purchasing the arsenic was not as tall as I am and standing by me was lower than I. I do not remember as to the probable age of the man, but the best I remember about him, he was a young man. I am not able to identify the defendant as being or not being the man that purchased the arsenic from me. I am not able to say either way. I can not identify the defendant one way or the other, whether he was the man who bought the arsenic or whether he was not." The court, in approving the bill, says the evidence shows that deceased was poisoned with commercial arsenic, the same kind that the witness says he sold. This testimony was followed by the testimony of Sheriff Cox, who testified that appellant was in town about the time this arsenic was sold, was a young man not so tall as the witness Holt, and the further testimony that defendant had made the coffee in which the arsenic was found. This being a case of circumstantial evidence, the testimony was admissible to be considered along with other circumstances by the jury.

3. The State introduced in evidence a statement made by defendant before the grand jury of Erath County. It is as follows:

"My name is J. K. Bailey. I understand that I am accused of poisoning the Alexander family, and of killing J. A. Alexander by poisoning him, and I have been warned by Ben Palmer, the district attorney, in the presence of the grand jury of Erath County that I am suspected and accused of committing said crime of murder by poisoning, and also warned that I do not have to make any statement—all, and that any statement that I might make can be used in evidence against me and not for me, and with this understanding I hereby make the following statement freely and voluntarily to the grand jury of Erath County, Texas: On last Monday morning I got up between five and six o'clock, there was no one else up when I got up. I made a fire in the heater and then made a fire in the cook stove. I then took the coffee pot that the grounds were boiled over in and threw out the contents and rinched out the pot. I then emptied the coffee grounds out of the other coffee pot into the first pot. I then put some water into the second pot and ground some coffee and put in the second pot. I ground a tea cup full of coffee. I got the coffee that I ground out of a bucket that we had been using out of about a week. My wife got up before the coffee boiled. She was the first one to get — after me. She and I did not sleep together that night. Cain Kirk was there and my wife suggested that Cain and I sleep in our bed and she slept in

another room. We slept the same way on Saturday night. When breakfast was ready we all went to the table, the following persons were at the table, old man Alexander, Henry Alexander, Mrs. Alexander, Henry's mother, myself and wife, Cain Kirk and Henry's two children. My wife poured out the coffee, old man Alexander began to drink his coffee first and drank nearly all his cup of coffee. Henry Alexander first spoke and said he thought there was something wrong with the coffee. Old man Alexander then said that he tasted something in it but thought it was pepper. I had taken two sups of my coffee and I said I could not taste anything wrong with it. I had cream in my coffee and I could not taste anything wrong with it, and I asked my wife to pour some coffee in a glass and I took three swallows of it, she poured it about half full and I drunk all of it, in the meantime the old man had gotten up and gone out in the yard and began to vomit. Henry said I believe I feel sick and got up and went out. He went out one door and his father went out the other one. I did not think there was anything wrong with the coffee and I asked my wife to pour this out in a glass and drank it to show them that I did not think there was anything wrong with it. Three of us had cream in our coffee, Henry, my wife and myself. Cain Kirk and myself went out in the yard to see about the old man and assist him back into the house. I got sick before I got in the house. I then went out and began to vomit and then went to bed. My wife got sick and went to bed; we went to bed separate and remained so. I think there was something in the coffee and I do not believe that it got in there by accident. I don't know anybody that has any ill-will against me or my wife or any of the Alexander family, and I don't know of anybody that would have any reason for doing this. (Signed) J. K. Bailey."

The defendant objected to the introduction of this statement, "because at the time said statement was made the defendant was under arrest and had been taken from the jail before the grand jury, and the said written statement of the defendant so taken before the grand jury did not comply with the law and that the warning required by law was not contained in the statement and said statement did not contain the warning required by law that said statement may be used in evidence against the defendant on his trial for the offense concerning which the confession is therein made and said statement did not contain the warning that is required by statute that any statement made by the defendant may be used in evidence against him on his trial for the offense concerning which the confession is therein made, and because said statement does not contain the warning required by law that the defendant does not have to make any statement at all, and because said statement shows that it was made to the grand jury of Erath County, and does not show that he was warned by any particular member thereof."

The State, before offering this instrument in evidence, had proven by the district attorney that defendant came before the grand jury to testify as a witness. This was a right he had, to voluntarily go before the

grand jury and make a statement. He could not be compelled to do so, and if after being duly warned, as the statement shows he was, and which is not denied, he voluntarily testifies before that body, such testimony is admissible in evidence. Thomas v. State, 35 Texas Crim. Rep., 178; Jones v. State, 33 Texas Crim. Rep., 7; Paris v. State, 35 Texas Crim. Rep., 82; Wisdom v. State, 42 Texas Crim. Rep., 579; Grimsinger v. State, 44 Texas Crim. Rep., 1. The statutes relating to extra-judicial confessions do not relate to the testimony of a witness given at a former trial, or testimony voluntarily given before a grand jury or examining trial after being duly warned.

4. The appellant objected to the testimony of Prof. Needham on the ground that the "evidence is wholly uncertain as to what date or time the coffee pot introduced in evidence was delivered to Dr. Farmer, and the evidence did not show under whose care said coffee pots were from the time of the alleged poisoning until they were delivered to Dr. Farmer, nor whether said coffee pots remained in the same condition during the interval between the alleged poisoning and their delivery to Dr. Farmer, and because the coffee analyzed was not shown to have been delivered to the chemist as it was drunk by deceased, it having been poured out in a pan and sat on the table in the kitchen for a period of several hours." Mrs. Alexander testified: "On Monday morning I waked up and heard someone in the kitchen. I got up and dressed, and went into the kitchen, and there was no one in there but the defendant. I asked him if he was getting breakfast, and he said, 'Yes, I have got the coffee made.' I told him I thought Ella (his wife) was in there, and defendant then said that Mrs. Bailey had not got up yet, and I told the defendant then that I would go in and wake her up. I then went on back into the house, into my room and sat down in my chair, and had just turned to call Mrs. Bailey who was in an adjoining room, when she came out of the room to where I was. She had her shoes in her hand, and sat down there in my room and put them on, and then got up and went into the kitchen. . . .

"I here identify the two coffee pots which were used by my family at the time in question and which were in use on this Monday morning at the time of this trouble. One of them is a plain, shiny metal pot, and the other is what is called a blue enamel pot, both of them about the same size. These pots were taken from the house by the doctors, or by Dr. Farmer, late in the evening of Monday the 17th, I think, or maybe the next morning. I also identify the bottle of coffee which I poured from one of the pots and gave to Dr. Farmer. After this trouble came up, the coffee in the blue enamel pot was poured into a tin pan, and some of the coffee then poured into this bottle by me, and I then carried it to Dr. Farmer, and I myself also gave him the pots. I can't remember the time when I gave this bottle and the coffee pots to the doctor, and it may be that it was the next day after the trouble came up, or it might have been the next. I think, however, that it was the next day after the trouble, and that is my best recol-

lection. I remember though that I poured the coffee into the bottle on the morning of the 17th, the morning on which J. A. Alexander died, and I think on the same morning, or on the same day the coffee pots, the two of them here, had been emptied of coffee and set back on the stove. The coffee in this bottle here exhibited had been poured out into a pan sometime during the same Monday morning, and was afterwards poured into this bottle. When Dr. Farmer was at the house during that day he said he wanted to take some of the coffee we had for breakfast for the purpose of making an analysis of it, and we had kept it for that purpose, and I then went and got it for him and put it in this bottle. I do not think the doctor got the coffee pots until the next morning, but I am not certain about that. I am not sure either that I myself gave the doctor the coffee pots, or whether someone of the family gave them to him, or some other person. I personally gave him the coffee in the bottle."

Dr. Farmer testified he kept the pots and coffee until he delivered them to Prof. Needham. The court did not err in admitting the testimony of Prof. Needham.

5. As qualified by the court there was no error in not admitting the testimony of the witness W. S. Sitton. If Henry Alexander on the witness stand testified as stated by the court, the question asked of the witness Sitton would be corroborative of Alexander, and would not tend to impeach him as claimed by appellant, and would in no way tend to connect appellant's wife with the matter.

6. In bill No. 10 appellant complains of several questions asked the State witness Holt while he was on the witness stand. The bill states: "While the witness Ulpin Holt, a witness for the State, was on the stand he was asked by counsel for the State if his, witness' sympathy, was not entirely with the defendant, and if he, witness, would prefer to not testify against defendant, to which the witness answered that he did not like to testify at all but that he hadn't any sympathy about the matter, and was not interested either way. Witness was then asked if he would not be very sorry if he could identify defendant, to which the witness answered that if defendant was guilty he would not be sorry to identify him. He was then asked by counsel for the State if witness did not say, when he, witness, went into the room where defendant was that he, witness, could not afford to say that defendant was the man because he would hang defendant. To which witness answered that he was not going to say that defendant was the man because he, witness, was not sure, and that it was too serious for witness to say that he sold a man arsenic in a case like that." The only objection made was the questions were "improper." This objection is insufficient. Carter v. State, 37 Texas Crim. Rep., 403; Miller v. State, 36 Texas Crim. Rep., 47; Yawn v. State, 37 Texas Crim. Rep., 205. While the questions may have been improper, yet the answers were such that they could not be harmful to defendant, but would seem to be beneficial.

7.   There is one other question raised as to the admissibility of certain testimony.   Henry Alexander was permitted to testify that defendant had informed him that he had collected twenty-five dollars on an insurance on account of an accident while defendant was at work on the road, and Cain Kirk, on cross-examination, testified that on the day before the killing defendant told him he had collected insurance money on a horse that died.   Inasmuch as it was the theory of the State that defendant had placed the arsenic in the coffee to kill his wife in order to collect the policy of insurance he had taken out on her life, and made payable to himself, with reckless disregard of whom else he might also kill, the court states he admitted the testimony as showing the bent of mind of appellant for getting insurance money.   If it would tend to show that appellant had a mania for insurance money it would be admissible for that purpose, and if it did not have that tendency, it would add no strength to the State's case, and this court has held in Tinsley v. State, 52 Texas Crim. Rep., 91, that if the testimony was erroneously admitted, yet it did not tend to strengthen the case of the State, it would not authorize a reversal of the case.

8.   In one bill it is shown that the jury returned a verdict reading: "We, the jury, find the defendant guilty as charged in the indictment and assess his punishment at life imprisonment in the State penitentiary."   The court instructed the jury that in their verdict they had not found the degree of murder, and "in your verdict you must state the degree of murder of which you find the defendant guilty," and they must therefore retire to their room and find the degree and so state in their verdict.   The jury did so and returned a verdict finding defendant guilty of murder in the first degree.   In this there was no error.   See article 712 of the Penal Code, and decisions cited under section 1262, White's Annotated Penal Code.

9.   The only other bill of exceptions in the record relates to the testimony heard on the motion for a new trial.   The term of court at which this case was tried adjourned on the 16th day of February, 1910, and this bill was not filed until May 3, 1910, about eighty days after the adjournment of court.   It has been uniformly held by this court a bill presenting the evidence on a motion for a new trial, change of venue, etc., in order to be entitled to consideration on appeal, must be filed during the term of court, and bills presented subsequent to the adjournment of court can not be considered by us.   Probest v. State, 60 Texas Crim. Rep., 608, and authorities there cited.

10.   In the eleventh paragraph of defendant's motion for a new trial he complains that the court instructed the jury that murder in the first degree in this case could be predicated upon either express or implied malice, insisting that murder in the first degree is upon express malice only.   This question is raised in various ways in the motion for a new trial, and in one ground it is alleged that the court should have also submitted murder in the second degree.   The evidence in this case clearly demonstrates that arsenic was placed in the coffee which de-

ceased drank, and this poison caused his death. A jury might be authorized to find that some person other than defendant placed the poison in the coffee, but no reasonable mind could draw any other conclusion than that this was the cause of death and no other cause is suggested by the testimony. Article 711 of the Penal Code provides: "All murder committed by poison is murder in the first degree." Thus it is seen that the Penal Code makes murder on either express or implied malice murder in the first degree when caused by administering poison. It is true that the principal motive shown in this case, if defendant is guilty, is that defendant placed the arsenic in the coffee to kill his wife in order to collect insurance money, and no express malice is shown as against deceased, except that in placing the poison in the coffee, knowing as he did that deceased drank coffee, he did so with reckless disregard of human life, not caring whom he killed, so he killed his wife. This question is so fully and ably discussed by Judge White in the case of Tooney v. State, 5 Texas Crim. App., 189, we do not deem it necessary to enter into a discussion of it here, but simply refer to that decision. See also Rupe v. State, 42 Texas Crim. Rep., 477, and Hamlin v. State, 39 Texas Crim. Rep., 579.

11. The court charged the jury: "If you believe from the evidence in this case, beyond a reasonable doubt, that arsenic in a deadly quantity was mixed and mingled with the coffee which J. A. Alexander drank on the day of his death, but you further believe from the evidence that Mrs. Ella Bailey or Henry Alexander or any other person than the defendant mixed and mingled said arsenic with said coffee, or if you have a reasonable doubt as to whether or not they did, you will give the defendant the benefit of such doubt and acquit him." This charge is not subject to the criticism that it assumes that arsenic was mixed with the coffee, but instructs the jury that if they "believe, beyond a reasonable doubt, that arsenic in a deadly quantity" was so mixed, etc. Neither is it subject to the criticism that following the words, Mrs. Ella Bailey, the words "wife of defendant" should have followed. There is no other Mrs. Ella Bailey mentioned in the record, and the jury could not have been misled by the failure to use these words. A charge in terms similar to this is approved in Blocker v. State, 55 Texas Crim. Rep., 30.

12. Neither did the court err in instructing the jury that the State having introduced the statement of defendant made before the grand jury, it should "be taken together, and the State is bound by all of it unless the State has shown by the evidence it to be untrue." This court has held that when the State introduces a confession of defendant it is bound by all the statements therein, except such as it may prove to be untrue. (Combs v. State, 52 Texas Crim. Rep., 613; Jones v. State, 29 Texas Crim. App., 20; Pratt v. State, 53 Texas Crim. Rep., 281.) However, the State is bound by only such statements as it introduces in evidence, and when, as in this case, the State introduced the written statement or confession, and the defendant

proved by a witness that the defendant, when before the grand jury, made additional statements which are not contained in the written confession, the State is not bound by such additional evidence, the defendant and not the State having introduced it in evidence.

13. The court did not err in limiting the effect of the evidence that if Mrs. Bailey and Henry Alexander suffered injury from drinking coffee, it could be considered only in passing upon the intention of defendant in mixing and mingling arsenic with the coffee, if he did so. It was admissible for no other purpose, as the defendant was on trial alone for the murder of J. A. Alexander.

14. The court did not err in not submitting the issue of whether or not J. A. Alexander came to his death from lead or zinc poison. There is no evidence that raises this issue, but the evidence is clear and unequivocal that the death was occasioned by arsenic. While the physicians admit that when they first got there, they thought perhaps the sickness was caused by zinc or other corrosive poison, but after a thorough examination they, in their testimony, make it clear that deceased died from arsenic poisoning.

15. We have already discussed and cited the authorities why we can not consider the evidence adduced on the motion for a new trial, and the allegation in the motion that one of the jurymen was prejudiced against defendant, and had prior to this trial expressed an opinion as to the guilt of this defendant, can not be considered. But if we should consider the evidence, it appears that appellant's counsel was informed of this fact before the jury retired to consider their verdict, and raised no objection until after the verdict was rendered. In addition to this the juror denied emphatically that he had any bias or prejudice or had ever made the statement attributed to him, and this issue was passed on by the trial court adversely to appellant. These matters under these conditions would present no error. Shaw v. State, 32 Texas Crim. Rep., 155; Cockrell v. State, 32 Texas Crim. Rep., 585; Givens v. State, 6 Texas, 343.

16. In his twenty-third ground in the motion for a new trial defendant alleges newly discovered evidence, and attaches the affidavits of R. D. Howard, Harve Keith, W. T. Gresham, and J. C. Barrett, and Mrs. L. E. Cook and W. H. Cook. The affidavits of Mr. and Mrs. Cook are to the effect that in January, 1908, they moved into a house that was formerly occupied by appellant and his wife, and that shortly after they moved into the house Mrs. Bailey came to the house and got a small package from over the door, and said it was "nothing but a little arsenic, that she kept it all the time." By the testimony of both these witnesses it is shown appellant went to this place with his wife and left there with her on this occasion, and this circumstance took place about two years before the homicide. As defendant was with his wife on this occasion, both in going and coming away from the place, it does not appear that this would be newly discovered evidence, and inasmuch as defendant, in his confession, admits he made the

coffee on the morning in question, and also admitted it to Mrs. Alexander, and the doctors' evidence shows that Mrs. Bailey took enough of the coffee to very near cause her death, while their testimony is that appellant was feigning sickness, and the testimony of other witnesses is that defendant did not drink his coffee that morning, the evidence is not of that character that would probably produce a different result on another trial. Burns v. State, 12 Texas Crim. App., 269; Fisher v. State, 30 Texas Crim. App., 502; West v. State, 2 Texas Crim. App., 209; White v. State, 10 Texas Crim. App., 167; Shaw v. State, 27 Texas, 750; Duval v. State, 8 Texas Crim. App., 370; Gross v. State, 4 Texas Crim. App., 249; Hutcherson v. State, 6 Texas Crim. App., 468; Price v. State, 36 Texas Crim. Rep., 403.

By the witness Howard it is stated that it is expected to be proven that while the men were at work on the road, he passed there one day and that he saw Henry Alexander lying down on a cot inside of a tent, and Mrs. Bailey was working with a stove outside of the tent, and that on another occasion he saw Henry Alexander and Mrs. Bailey in a buggy together. Bailey is shown to have been working on the road at this time, as well as Alexander, and it was customary for Mrs. Bailey to go after them in a buggy and take them home. We fail to see in what way this testimony would be material as showing that Mrs. Bailey desired to take the life of Henry Alexander or his father.

By the witness Harve Keith it is stated that he bought a yearling from Mrs. Bailey and paid her for it. We fail to see the materiality of this testimony. If this is the animal that was mortgaged, the defendant developed this testimony himself. The State did not introduce it, and it could not and did not have any bearing on the case.

By the witness Barrett he states he expects to prove that Henry Alexander had come to him prior to the trial and wanted him to swear that appellant's horse died with strychnine poisoning. That witness got angry and told him if he was hunting men to swear lies, he had got the wrong man, when Alexander said that he was not hunting anyone to swear lies but he wanted to show that the horse died from poison, and witness said he told him that he had made proof that the horse had died of spasmodic colic. There was no evidence introduced or offered to be introduced that any horse had died of poisoning, and besides, this witness shows he was summoned and attended court as a witness. This would not be ground for a new trial. Powell v. State, 36 Texas Crim. Rep., 377; Haltiburton v. State, 34 Texas Crim. Rep., 410. It could serve no other purpose than to impeach Alexander should he be asked if he went to the witness and made such statement. No such evidence was in the case.

By the witness Gresham it is stated that it is expected to be proven that he went to the Alexander home on the day of the death of deceased, about sun down and remained there that night, and that he gave appellant two doses of medicine that night, and that he, witness,

saw appellant vomiting there that night. That appellant took the same number of doses of medicine that night that Henry Alexander and Mrs. Bailey took, and it all came out of the same bottle. This could not be newly discovered evidence. If anyone knew that fact appellant did as well before as subsequent to the trial, and the witness states no one ever asked him what his evidence would be prior to the trial. Carrico v. State, 36 Texas Crim. Rep., 618.

The authorities in this State seem to hold that it is incumbent upon a defendant to show that the alleged newly discovered evidence has come to his knowledge since the former trial, and that it was not owing to want of diligence on his part that it was not discovered prior to the trial; that it is competent and material evidence, and not cumulative, corroborative or collateral, and that it will probably produce a different result. A portion of this testimony alleged to be newly discovered would not be admissible in evidence, a portion is such that defendant must have had knowledge of it, and a portion of it would be admissible solely, if at all, for the purpose of impeaching Henry Alexander. The only material testimony appears to be that of Mr. and Mrs. Cook, and when it is considered that their evidence shows that appellant was with Mrs. Bailey when she came to their house and left with her, and that this was two years prior to the occasion when deceased lost his life, it is not such testimony as would probably produce a different result, especially so when the record shows that about a week before, while Mrs. Bailey was cooking dinner, she found something wrong with the peas and called the attention of the entire family to it, and the peas were poured out; that, on the day prior to the day that poison was placed in the coffee, Mrs. Bailey was cooking dinner, she stepped out and appellant was seen at the stove, and just as Mrs. Alexander stepped in he was seen to replace the lid on the pot in which the cabbage was being boiled, and the cabbage were then found to have a queer taste and had to be poured out. After the cabbage and the meat boiled with them had been emptied in the yard, a neighbor's dog came over, and while not seen to get the meat or cabbage, yet the dog died shortly after being in the yard where the cabbage had been emptied. For a collation of authorities see sec. 1149, White's Annotated Code of Criminal Procedure.

17. The only other ground is that the evidence is insufficient to support the verdict. One who has read this record, or followed the testimony as herein cited, is convinced that the evidence amply supports the verdict of the jury, and there being no error in admitting or rejecting testimony, the court fully and fairly submitting the issues, the verdict should not be disturbed. While it is true the evidence is entirely circumstantial, yet when a chain is woven that is connected it is as convincing as positive testimony.

The judgment is affirmed.

*Affirmed.*

ON REHEARING.

March 13, 1912.

HARPER, Judge.—This case was affirmed at a former day of this term, and appellant has filed a lengthy motion for a rehearing, and, among other things, contends that the court was in error in holding that the statement made by appellant before the grand jury did not come within the provisions of article 790 of the Code of Criminal Procedure as amended by the Legislature in 1907. It has been so held in an unbroken line of decisions of this court, since the amendment of the Act in 1907, Judge Davidson holding in the case of Pierce v. State, 54 Texas Crim. Rep., 424, rendered in October, 1908: "With reference to his evidence before the grand jury, it is shown that it was at his request, and that he went voluntarily before that body to make a statement and did make it, and that it was reduced to writing and signed by him. We think this was admissible under our decisions. The question has been discussed frequently, and this character of evidence given before a grand jury has been held to be admissible. Grimsinger v. State, 44 Texas Crim. Rep., 1; Wisdom v. State, 42 Texas Crim. Rep., 579. These cases collate the authorities, and discuss the question fully. See, also, Branch's Crim. Law, section 227. It is thus seen that evidence voluntarily given before a grand jury, in an effort to prevent an indictment, does not come within the provisions of article 790, supra.

2. Appellant also urgently insists that the charge of the court in instructing the jury: "The State has introduced in evidence the testimony of the defendant given before the grand jury of Erath County, and I charge you that the whole of said statement and evidence of the defendant as given before said grand jury and admitted in evidence before you, is to be taken together, and the State is bound by all of it unless the State has shown by evidence it to be untrue. Such statements are to be taken into consideration by the jury as evidence in this case in connection with all the other facts and circumstances of the case," is error. Appellant insists this charge is upon the weight to be given the testimony, and cites us to the case of Wallace v. State, 66 S. W. Rep., 1102. That case supports the contention of appellant, but it stands alone in our decisions, and was specifically overruled in the case of Pratt v. State, 59 Texas Crim. Rep., 635, wherein it is shown that the decision in the Wallace case was contrary to all the other decisions of this court, and the charge given is not subject to the criticism contained in the motion for new trial. See that case for citation of authorities.

3. Appellant insists that this court erred in holding that the trial court did not err in limiting the effect of "the evidence to the effect that Mrs. Ella Bailey and Henry Alexander suffered injury, if any, from the effects of the coffee may be considered by you in passing upon the intention with which the defendant acted in mixing and mingling

said arsenic with said coffee, if he did so, but for no other purpose. The defendant is not on trial for any injury to Mrs. Ella Bailey, nor to Henry· Alexander, and can not be convicted for the same." He says: "The court did not cite any authorities in support of its opinion. We thought this principle was so well established in the law as to need no citation of authorities, but see Thornley v. State, 36 Texas Crim. Rep., 124; Saldiver v. State, 55 Texas Crim. Rep., 177; Gardner v. State, 55 Texas Crim. Rep., 394; Wheeler v. ·State, 23 Texas Crim. App., 598; Burks v. State, 24 Texas Crim. App., 332; Barnes v. State, 28 Texas Crim. App., 29; Hanley v. State, 28 Texas Crim. App., 375; McCall v. State, 14 Texas Crim. App., 353; Martin v. State, 36 Texas Crim. Rep., 125; Riley v. State, 29 S. W. Rep., 40. See, also, sec. 366, Branch's Crim. Law, where the rule is laid down that the testimony was admissible, but it would have been error for the court to have failed to limit the purpose of it.

4. Appellant also insists that the court erred in not considering the defendant's bill of exceptions No. 22 in regard to testimony heard on motion for new trial, and which was filed after term time, claiming that a different rule prevails when evidence taken on motion for new trial is preserved by bill of exception, from that when preserved in a statement of facts. Section 7 of the official stenographers' act reads: "When an appeal is taken from the judgment rendered in any cause in any District or County Court, the parties to the suit shall be entitled to and they are hereby granted thirty days after the day of adjournment of court in which to prepare or cause to be prepared and to file a statement of facts and bills of exception." It is thus seen that all which relates to filing bills of exception and statements of fact is in the same section, and is upon the same footing, and this court held in Black v. State, 41 Texas Crim. Rep., 185: "It is evident to our minds that these statutes refer exclusively to statement of facts *adduced on the trial of the case itself, and have no application to issues of fact formed on grounds set up in the motion for new trial,* except where the statute makes provision for *filing of papers* after the adjournment of court, these papers must all be filed during the term." This has been adhered to in all cases since the rendition of that opinion, and was so fully discussed by us in the case of Knight v. State, recently decided, we do not deem it necessary to further mention the matter, but refer to that case for citation of authorities.

5. The only other ground in the motion relates to the testimony of Ulpin Holt, who testified that about a week before the homicide he sold to a young man not quite so tall as himself a nickel's worth of commercial arsenic, although not able to identify appellant as the person. As stated in the original opinion, this is a case of circumstantial evidence, and this testimony when followed by the testimony that appellant was in town about that time, and was a young man not so tall as Holt, and that the arsenic found in the coffee was the kind sold by

Holt, and the further fact that appellant made the coffee, the testimony was admissible, to be given such weight as the jury deemed proper. Ballew v. State, 36 Texas, 98; Noftsinger v. State, 7 Texas Crim. App., 301; Preston v. State, 8 Texas Crim. App., 30; Early v. State, 9 Texas Crim. App., 476; Simms v. State, 10 Texas Crim. App., 131; Washington v. State, 8 Texas Crim. App., 377; Means v. State, 10 Texas Crim. App., 16; Green v. State, 12 Texas Crim. App., 51; Pogue v. State, 12 Texas Crim. App., 283; Langford v. State, 17 Texas Crim. App., 445; Bouldin v. State, 8 Texas Crim. App., 335; Cooper v. State, 19 Texas, 450. In these cases it being held that in a case depending upon circumstantial evidence, the mind seeks to explore every possible source from which light, however feeble, may be derived, and in such case it is peculiarly proper that the jury should have before them every fact and circumstance, however slight, which might aid them in coming to a satisfactory conclusion as to the guilt or innocence of the accused. And in the case of Sims v. State, 10 Texas Crim. App., 131, this court held that in cases of circumstantial evidence no definite line of demarcation can be drawn with regard to facts proximate and remote. The test is: Do they tend to throw light upon the transaction?

6.   Such matters as are sought to be raised in this motion not based on any bill of exception or ground in the motion for new trial can not be considered by us. Flourney v. State, 57 Texas Crim. Rep., 88; Eckerman v. State, 57 Texas Crim. Rep., 287; Holmes v. State, 55 Texas Crim. Rep., 331, 116 S. W. Rep., 571; Reyes v. State, 51 Texas Crim. Rep., 420; Wilson v. State, 52 Texas Crim. Rep., 173; Pena v. State, 38 Texas Crim. Rep., 333, and cases cited in Ryan v. State, 142 S. W. Rep., 878, and Knight v. State, decided at this term of court.

The motion for rehearing is overruled.

*Overruled.*

DAVIDSON, PRESIDING JUDGE.—I do not understand that Black v. State, 41 Texas Crim. Rep., 186, is authority for not filing bills of exception after term time. It only is authority for the holding that all papers must be filed during term, not authorized by law to be filed after term time.