PEARL FORRESTER V. THE STATE.

No. 2643.   Decided November 26, 1913.

Rehearing denied February 11, 1914.

**1.—Assault to Murder—Sufficiency of the Evidence.**

Where, upon conviction of assault to murder, the evidence was sufficient to sustain the same, there was no error.

**2.—Same—Jury and Jury Law—Sheriff—Challenge to Array.** ·

Where, upon trial of assault to murder, the defendant moved that all the jurors who had been selected by the jury commissioner be summoned before passing on the jury, and the record showed that while the sheriff was the assaulted party he had no special interest in the case; that the absent jurors had been excused by the court for legal cause or exemption; that the talesmen were in fact summoned by the deputy sheriffs who were not shown to have acted corruptly or tried to influence the jurors, and there was no proof in support of said motion, there was no error in overruling the same as well as a motion challenging the array of jurors.

**3.—Same—Evidence—Res Gestae.**

Upon trial of assault to murder, there was no error in permitting the physician who dressed the wounds of the party injured that he immediately reached him after the shooting and that he found him conscious, and though pale from the loss of blood, calm, and not specially excited at the time.

**4.—Same—Evidence—Gun Shells.**

Upon trial of assault to murder, there was no error in admitting in evidence testimony that the next morning after the shooting a steel bullet was found at the place where the shooting occurred, and also some empty automatic pistol shells.

**5.—Same—Evidence—Conversation Over Telephone.**

Where, upon trial of assault to murder, it developed that the defendant shortly before the shooting used the telephone ordering a conveyance, etc., in

which she afterwards drove to the place of the shooting, there was no error in admitting testimony that the telephone operator heard the conversation and knew her voice.

### 6.—Same—Cumulative Sentence.

Where defendant was convicted of assault to murder, and it was shown to the court that a prior judgment of conviction for felony was had against her in another county and the court, thereupon, made her sentence begin after the sentence in the other case had expired, in conformity with article 862, Code Criminal Procedure, there was no error.

### 7.—Same—Misconduct of Jury—Statement of Facts.

Where the statement of facts concerning the misconduct of the jury was not filed during the term of the trial court, and was in question and answer form besides, the same can not be considered on appeal, and it must be presumed that the court correctly overruled a motion on that ground. Following Probest v. State, 60 Texas Crim. Rep., 608, and other cases.

Appeal from the District Court of Grayson. Tried below before the Hon. W. J. Mathis.

Appeal from a conviction of assault to murder; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Sturgeon & Beauchamp,* for appellant.—On question of organization of jury: Armstrong v. Traylor, 87 Texas, 598.

On question of conversation over the telephone: Mo. P. Ry. Co. v. Heidenheimer, 82 Texas, 195; Ex parte Terrell, 95 S. W. Rep., 536.

*C. E. Lane,* Assistant Attorney-General, for the State.—On question of organization of jury: Arnold v. State, 38 Texas Crim. Rep., 1; Anderson v. State, 34 id., 96; Ross v. State, 56 id., 275.

On other questions: Cited cases in opinion.

PRENDERGAST, PRESIDING JUDGE.—Appellant was convicted of an assault with intent to murder and her punishment fixed at the lowest prescribed by law,—two years in the penitentiary. The evidence is amply sufficient to sustain the verdict and judgment.

The assault was charged to have been committed on November 2, 1912, on Lee Simmons, who was a few days later elected sheriff of said county, and duly qualified, and was such sheriff at the time of this trial. The case was tried and the verdict rendered on May 7, 1913. The court adjourned for the term ten days later. When the case was called for trial and after the State had announced ready, but before appellant announced, she made a motion to have the court appoint some citizens of the county, who had no special interest in the case, or the result thereof, to perform any and all the duties incumbent upon said sheriff and his deputies. The court overruled this motion and qualified appellant's bill of exceptions to his action, by stating that she did not ask that the constable perform said duties, and that no injury was shown.

Before the selection of the jury and after the court ordered talesmen

summoned she made another motion setting up that the jury commissioners had drawn sixty names from the jury wheel to be summoned as jurors for that week of the court; that the sheriff did not summon fifteen of them and only twenty-two of them appeared as jurors, and she therefore prayed the court to require the others so drawn from the jury wheel to be summoned. The court qualified her bill to the overruling of this motion by stating that all regular jurors were accounted for prior to the filing of said motion. This bill of exceptions thus qualified was filed on June 13th about four weeks after the court had adjourned for the term. At that time appellant took another bill to the court's said qualification, claiming that nothing in the record showed they were accounted for and because in conflict with the court's testimony on the subject which was heard on her motion for new trial. This bill was not filed until June 13th. The court qualified this,—and appellant accepted and filed it,—stating the same thing, that at the time of appellant's complaint all regular jurors had been accounted for. If we could consider · this latter bill and the testimony purported to be heard, it would show in effect, that the presiding judge, who tried this case, testified on said hearing of the motion for new trial that quite a number of the jurors who were drawn from the jury wheel were excused by him for legal cause, and some on account of legal exemption, and that twenty-two of the regular jury was thus left, who appeared as jurors at the time.

Appellant made another motion challenging the array of talesmen because they were selected and summoned by the sheriff and his deputies with a view to cause her to be convicted and they were prejudiced against her, and friends and supporters of the sheriff. The court, in approving appellant's bill to his overruling this motion, qualified it by stating that no proof was offered in support of said motion.

We have stated all the above matters pertaining to the summoning of the jurors, and to the organization and selection thereof so as to discuss them together.

In the first place, the sheriff was not a party to the suit, although he was the person alleged to have been assaulted. The State of Texas was the party to the suit against appellant. The duties of a sheriff, prescribed by law, are such as must necessarily make him more or less, active for the State in every felony case prosecuted in the courts and in a great many of such cases he is an important witness and used as such. Of course, the fact that he is an important witness in any case does not disqualify him from acting in his official capacity in serving any and all process therein. There is nothing in this record anywhere which shows that said Sheriff Simmons summoned those jurors, whether those drawn by the jury commissioners or the talesmen. Article 54, Code Criminal Procedure, is that whenever a duty is imposed by this Code upon the sheriff, the same duty may lawfully be performed by his deputy. And the record nowhere shows or tends to show that he or any of his deputies in any way talked to any of the jurors who were summoned, or in any other way tried to influence them against appellant. There is·

with the record what is agreed to by all parties and approved by the court as the complete testimony by question and answer on their voir dire of every juryman, some thirty-seven, summoned in this cause. This was not filed until June 20, 1913, about five weeks after the court adjourned. If we could consider this it would show that said sheriff personally did not summon a single one of the jurors, but that they were summoned by two of his deputies, and the testimony of each of these jurors would show that neither the sheriff nor any of his deputies in any way whatever attempted to influence them against appellant, or said anything to them in any way about her, or in connection with this case, other than merely summoning them; and that said jurors were wholly disinterested, entirely without prejudice, and in every way fair and impartial.

Our statute expressly provides that no challenge to the array of jurors shall be allowed when the jurors have been selected by jury commissioners. (C. C. P., art. 681.) Article 680 provides that the defendant may challenge the array for the following causes only: That the officer summoning the jury has acted corruptly, and has wilfully summoned persons upon the jury known to be prejudiced against defendant with a view to cause him to be convicted. While appellant's motion alleged this ground for challenge to the array of talesmen, she swore to it only "to the best of her belief and information." As stated above, the court, in qualifying the bill, said she offered no proof in support of said motion, and, as stated above, if we could look to the whole record, it would show that her allegation was affirmatively untrue and without foundation.

It will be borne in mind that this was an ordinary felony case,—not a case where a special venire was authorized or permitted by law. It is only in special venire cases that the law authorizes or permits an attachment or other process to be issued for special veniremen who do not appear. (C. C. P., art. 673.) And that even in such cases the cause shall not be unreasonably delayed on account of the absence of such veniremen. (C. C. P., art. 696.) This being an ordinary felony case, the statute expressly directs how the jury shall be formed in chapter IV, title VIII, article 702 et seq., and there is nothing in the record to show that this statute was not strictly complied with. So that in our opinion no error is shown by the court in overruling appellant's said motions.

There is testimony in the record to the effect that on the evening of the night said Simmons was shot, appellant had a conversation with the constable at Sherman in which she asked him if "we went out of office when the sheriff did"; he told her they would, and she said she hated that. Mr. McAfee was sheriff at that time. She said she always hated officers until she came here and liked these and she hated to see them go out. She further asked him if he didn't wish somebody would kill Mr. Simmons before he went in office and when he told her he didn't, she said she would. She said if she was a man she would kill anybody that interfered with her business that way. And at the time of this

conversation she pulled out an automatic pistol from under her pillow and exhibited it to the witness. He said it must have been a .32 or .38; that about 10 o'clock that night appellant alone went into a drug store and 'phoned to the transfer company to send her a conveyance to a certain place in Sherman. She then left the drug store, but soon after returned thereto and again called up the transfer company to know why the conveyance had not been sent to her. She at once left the drug store again. Very soon after this the transfer company did send a carriage to the place designated by her and she got in the carriage and directed the driver to take her to Mr. Simmons' residence, telling the driver to call Mr. Simmons out to the carriage, and as an excuse why she did not go to the door of his residence and call him out herself, to tell him that she was crippled and could not, and to induce him to come to the carriage to see her. She was a stranger to this hackman. The hackman took her to Mr. Simmons' residence, went in and knocked, and upon Mr. Simmons coming to the door, delivered to him her said message. This was about 10:20 at night. Mr. Simmons and family had already gone to bed, but were not asleep. He at once partially dressed and went out on the edge of the sidewalk to the carriage. Either the door thereto was then open, or the glass of the door lowered. He stepped up to the carriage and she asked, "Is this Mr. Simmons?" He replied, "Yes." She thereupon immediately began shooting at him and shot from four to six times, three of the balls taking effect in the body of Mr. Simmons. He ran some thirty feet, got behind a tree; she got out of the carriage, walked up the street by the tree he was behind hunting for him. Before this he did not know who it was who called him out to the carriage, nor who was shooting him, but then recognized, and swore that it was appellant. She did not discover him behind the tree and apparently not knowing what had become of him, she did not go back to the carriage, but left the scene and was soon afterwards caught and arrested. The evidence was amply sufficient to identify her as the person who shot said Simmons. Immediately after appellant left the scene, Simmons ran into his residence and had Dr. Netherly immediately called over the 'phone. He had also retired, but hastily partially dressed, jumped into his automobile and went to Mr. Simmons' residence some seven or eight blocks, as rapidly as he could, reaching there within about ten minutes from the shooting. Dr. Netherly testified to the wounds on said Simmons and Simmons' condition immediately after he reached him.

Appellant did not testify. Her defense was alibi and denying her identity as the party who shot Simmons.

The court did not err in permitting Dr. Netherly to testify over appellant's objections that Simmons was conscious when he reached him and examined him on this occasion, and that he was pale from the loss of blood, but calm and not specially excited at the time. There is nothing by appellant's bill or otherwise to indicate that this testimony

was not res gestae. It was not hearsay. Neither did the court err in permitting Mr. Goode to testify that early the next morning he examined the sidewalk and yard in front of Simmons' residence and found a steel bullet on the sidewalk. Neither did the court err in permitting the witness, Paul Smith, to testify that he was present the next morning, examined the sidewalk and premises in front of Simmons' residence and saw Mr. Etchison find some empty .38 automatic pistol shells there. The fact that this steel pistol ball and these shells were not found till the next morning would go to the weight only and not to the admissibility of this evidence. Neither did the court err in permitting Miss Mattie Gamble, the young lady telephone operator, to testify that she knew the voice of the appellant over the 'phone and heard her the night Simmons was shot and previously thereto talking over the 'phone.

When the court sentenced the appellant in this case, the State introduced before him a properly certified copy of a judgment of the District Court of McLennan County, Texas, in a case against appellant, dated April 25, 1912, sentencing her to confinement in the penitentiary for the term of two years from that date for theft of property of over the value of $50. At the same time, as shown by the bill, Mr. Lyle, her brother-in-law, testified, as stated by the court in his qualification of the bill, that she was the same person described in said judgment of conviction from McLennan County, and no proof was offered that she had been pardoned. The court, thereupon, sentenced her in this case, in accordance with the verdict of the jury, to two years confinement in the penitentiary, such confinement to begin when the sentence in the McLennan County case expired. This was strictly in conformity with the statute, article 862, Code Criminal Procedure, and the many decisions of this court thereunder. Culwell v. State, 70 Texas Crim. Rep., 596, 157 S. W. Rep., 765, and authorities therein cited.

The only other matter necessary to mention is that by appellant's motion for new trial he attacked the verdict of the jury on account of the improper conduct of the jury in considering their verdict on several grounds. The State contested this and filed an answer denying all of her allegations in that regard. The record shows, as stated above, that the verdict and judgment in this case were rendered on May 7, 1913. The motion for new trial was heard and overruled on May 16th at which time the court heard evidence on these contested issues, and then overruled the motion. The court did not adjourn until the next day, May 17th. There is with the record in this case what purports to be a statement of facts showing all this evidence. It was not filed in the court below until June 20, 1913, some five weeks after the court adjourned. Appellant's attorneys have filed a motion and affidavits herein, seeking to have this court to consider said purported statement of facts, but in no way shows any such state of facts as would authorize this court to consider it. The said purported statement of facts is on less than seven pages of typewritten matter. It could more properly have been contained on only three or four pages. There is no sufficient reason what-

ever shown or urged why this statement was not filed within term time. It could have been written out by the stenographer, or anyone else easily within an hour from the time appellant's motion for new trial was overruled. The court did not adjourn until the next day.

It has been the uniform holding of this court in a great many cases that such statements must be filed during term time and that this court can not consider them, unless so filed. It is needless to collate all of the cases. We cite only some of them. Black v. State, 41 Texas Crim. Rep., 185; Reinhard v. State, 52 Texas Crim. Rep., 59; Jarrett v. State, 55 Texas Crim. Rep., 550; Mikel v. State, 43 Texas Crim. Rep., 615; Williams v. State, 56 Texas Crim. Rep., 225; Probest v. State, 60 Texas Crim. Rep., 608; Tarleton v. State, 62 S. W. Rep., 748; Knight v. State, 64 Texas Crim. Rep., 541, 144 S. W. Rep., 967; Bailey v. State, 65 Texas Crim. Rep., 1, 144 S. W. Rep., 996. In the absence of a statement of facts this court must conclude that appellant's attack on the jury was not sustained.

The judgment is affirmed.

*Affirmed.*

[Rehearing denied February 11, 1914.—Reporter.]