R. P. WOODRING V. THE STATE.

*No. 665.   Decided May 1.*

1. **Requested Instructions when Embraced in the Charge—Practice.**—It is not error to refuse requested instructions where the same matter is fully embraced in the charge given.

2. **Charge of Court—Manslaughter—Provocation.**—On a trial for murder, an objection that the court's charge upon manslaughter is too restrictive, in that it confined the jury to the facts occurring at the homicide, is not tenable, where the record contains nothing which occurred before the homicide which tended to explain or intensify any act of deceased, so as to make that a provocation which was not within itself a provocation.

APPEAL from the District Court of Jones. Tried below before Hon. C. P. WOODRUFF.

This is a second appeal in this case. See Woodring v. The State, 33 Texas Criminal Reports, 26. After the case was reversed on the former appeal, the venue was changed from the county of Fisher to Jones County, on motion of defendant, owing to the fact that Fisher County was sparsley settled, and the case having been once tried in that county, it was wholly improbable that another jury could be obtained. At the second trial, in Jones County, appellant was convicted of murder of the second degree, his punishment being assessed at twelve years' imprisonment in the penitentiary.

The facts in the case will be found sufficiently stated in Woodring v. The State, 33 Texas Criminal Reports, 26, together with such additional facts as are stated in the opinion below.

*F. G. Thurmond, J. F. Cunningham,* and *Dan M. Jones,* for appellant, filed an able brief in the case, mainly devoted to supposed errors in

the charge of the court.   The portions of the charge involved in their contention are fully set out in the opinion.            .

*Mann Trice,* Assistant Attorney-General, for the State.

HURT, PRESIDING JUDGE.—Appellant was convicted of murder in the second degree and his punishment assessed at twelve years in the penitentiary; and from the judgment and sentence of the lower court he prosecutes this appeal.

This homicide arose out of a contention or disagreement as to who owned a certain fence.   The deceased, Thomas Lowe, claimed the fence. The appellant also claimed the fence.   A few seconds before the homicide the deceased was cutting or pulling down the wire fence.   Appellant went to him, armed with a pistol, and a difficulty ensued, resulting in the death of the deceased.   In regard to the ownership or possession of the fence, the court gave the following instructions, at the request of the defendant:

"1.   Manslaughter is voluntary homicide committed under the immediate influence of sudden passion arising from an adequate cause, but neither justified nor excused by law.

"2.   By the expression, '.under the immediate influence of sudden passion,' is meant, (1) that the provocation must arise at the time of the commission of the offense, and that the passion is not the result of a former provocation;   (2) that the act must be directly caused by the passion arising out of the provocation; it is not enough that the mind is merely agitated by passion arising from some other provocation, or a provocation given by some other than the party killed;   (3) the passion intended is either of the emotions of the mind known as anger, rage, sudden resentment, or terror, rendering it incapable of cool reflection.

"3.   By the expression, 'adequate cause' is meant such a cause as would commonly produce a degree of anger, rage, resentment, or terror, in a person of ordinary temper, sufficient to render the mind incapable of cool reflection.                        .

"4.   Should the jury believe from the evidence that the fence in question was upon the land of Tom Lowe, and in his possession, but that the defendant believed the fence to be on his (defendant's) land, and to be his own property, and that deceased began to cut and tear down said fence in the presence of defendant, and that defendant, by reason of said cutting of said fence, became angry and enraged to such an extent as to render his mind incapable of cool reflection, and acting under the immediate influence of said passion, and without any unlawful and deadly attack upon his person by the deceased, he shot and killed the deceased, then you will find him guilty of manslaughter, and assess his punishment at a term of years in the penitentiary not less than two nor more than five years."

"6. Should you believe from the evidence that the deceased, Tom Lowe, went upon the land of the defendant armed with, a deadly weapon, intending to kill the defendant if it became necessary to carry out his purpose, and began to tear down the fence thereon, the defendant, under such circumstances, would be justified, in law, in preventing deceased from continuing said trespass on his property, and in doing so would be justified in using force, if necessary, even to the taking of the life of the deceased, to prevent said trespass; provided, however, that defendant resorted to all other reasonable means in his power to prevent said trespass upon his property before killing the deceased. And if you find from the evidence that defendant killed deceased to prevent him from tearing down his (defendant's) fence, under the conditions above stated, and that he resorted to all other reasonable means at his command to prevent said assault upon his property before killing, then you will acquit the defendant.

"7. Should you believe from the evidence that there was a string of fence upon the land, the title of which was in dispute, and further find that defendant was in possession of said fence, believing it to be his own land, then he would have the same right to kill, to prevent a trespass upon said fence, as he would have if he owned said premises.

"8. Should you believe from the evidence that deceased went upon land belonging to defendant, and began cutting the fence thereon, then defendant would have the right to go where deceased was, and inquire of his purpose. And should you believe that defendant saw deceased upon his land, cutting his fence, and went to inquire of his purpose, and that the deceased, without any lawful provocation upon the part of the defendant, made an unlawful and violent attack upon the defendant with a hatchet, and by reason of said attack it reasonably appeared to said defendant that he was in danger of being killed, or of receiving serious bodily injuries therefrom, then defendant would be justified in killing deceased at once, without retreating, and without resorting to any other means to prevent said attack; and if you find that defendant killed deceased under such circumstances, you will acquit him, or if you have a reasonable doubt as to the existence of said state of facts, you will acquit him.

"9. Should the jury believe from the evidence that there was a fence upon the land the title to which was in dispute, and that said fence was not in the actual possession of any person, and that defendant believed that said fence was on his land, and that he saw deceased there, cutting said fence, and went to where deceased was, with no unlawful purpose, and that deceased became angry at defendant, and made an unlawful and violent attack upon him with a hatchet, and that by reason of said attack it reasonably appeared to defendant that he was in imminent danger of death, or of serious bodily injury, then he would have the right, in law, to kill deceased at once, without retreating, and without resorting to any other means to prevent said attack. And, in determining the appearance of danger to the defendant, you are to view

the entire transaction from his standpoint; and if you find that defendant killed deceased under such circumstances, you will acquit him, or if you have a reasonable doubt as to the existence of such state of facts, you will acquit.

"10. Should you believe from the evidence that neither the defendant nor the deceased had possession of the fence in question, and that both parties met there, each having a right to go, and that deceased made a violent attack upon defendant with a hatchet, by reason of which it reasonably appeared to him, viewed from his standpoint, that he was in danger of death, or serious bodily injury, and, so believing, he shot and killed deceased, then he will not be guilty of any offense, and you will so say by your verdict.

"11. If you believe from the evidence that defendant, Woodring, went to where deceased, Lowe, was cutting a fence which he (defendant) believed was on his land, and asked said Lowe not to cut his fence, and that Lowe told defendant to go away from there, or he would kill him, and immediately started to get his gun, which was on his horse, near by, and that it reasonably appeared to defendant, from said words of Lowe, and from his attempt to get his gun, that he (Lowe) intended to pull his gun out and shoot him (defendant), and, so believing, he shot and killed Lowe, then he would not be guilty of any offense, and you will acquit him, or if you have a reasonable doubt as to the existence of these facts, you will acquit.

"12. A man has a right, in law, to kill another trespassing on his property, provided he resorts to all other means at his command to prevent the injury before killing. And should you believe from the evidence that the defendant was in possession of the fence in controversy, whether he owned the same or not, and that Lowe armed himself with a gun and began to cut and tear down the fence, and that defendant went to him and asked him to not cut his fence, and that deceased declared his intention to continue the cutting of said fence, and did so continue, and if you further believe that defendant had no other means at his command to prevent or stop such cutting, except to kill the deceased, then there would be no other reasonable means at his command to which he could resort to prevent such cutting of said fence, and he would have a right to kill at once, to prevent said further trespass upon his property. And if you find that he killed the deceased under such circumstances, you will acquit him."

"14. If you find from the evidence that the deceased, Tom Lowe, made threats against the life of defendant to witnesses Large and Mrs. Strang, and that said threats were known by defendant, and that deceased was, at the time of his being killed, doing some act from which it reasonably appeared to defendant that deceased, Tom Lowe, was intending to execute said threats, and that, so believing, the defendant would not be guilty of any offense, and you will acquit him, or if you

have a reasonable doubt as to the existence of said facts, you will acquit him."

Appellant complains because the court refused to submit to the jury the following instructions: "The jury are charged, that if at the time of the alleged killing the defendant was on his own premises, and the deceased entered with force and arms, and was in the act of cutting down defendant's fence, and that, in attempting to prevent the deceased from cutting and removing defendant's fence, defendant was attacked with a deadly weapon by deceased, and that, while he was so attacked by deceased, defendant fired upon and killed deceased, then defendant, in such event, would be justified in firing upon and killing deceased; and in the event you so find, you will find the defendant not guilty, and so say by your verdict."

We are of the opinion that the instructions given were full and fair to the defendant, presenting all of his legal rights under the premises regarding the fence, and that the same matter contained in the rejected instructions was fully embraced in the instructions given. It is objected that the court's charge upon manslaughter was too restrictive; that it confined the jury to the facts occurring at the time of the homicide. This record contains nothing occurring before which tended to explain any act of the deceased, or intensify any act of the deceased, so as to make it a provocation which was not within itself a provocation. It frequently occurs that an act, with or without words accompanying it, becomes a provocation because of acts occurring before. This is not that character of case. The court's charge upon manslaughter was full, presenting it from every standpoint suggested by the testimony.

There is a conflict in the testimony. If the State's theory be correct, the verdict of the jury was amply supported by the testimony. The evidence of Miss Lowe, taken in connection with the wounds upon the dead man, the absence of any wounds or bruises upon the defendant, make a case of murder—at least in the second degree. On the other hand, if the defendant's theory was correct, he was being assaulted by the deceased with a dangerous weapon—a hatchet—under circumstances which would have excused the homicide. This theory, however, is sustained by the testimony of Miss Knutson. Her version of the facts attending the homicide is very much in conflict with the physical facts of the case. She swears that the deceased repeatedly struck the defendant on the head with a hatchet, knocking him to his knees. Defendant was seen immediately afterwards by several persons, one being his brother, and not a mark of violence was visible upon his person. Quite a number of witnesses examined the hatchets. They were both very dull. There was a slight cut through the brim of his hat, next to the band. This, however, was a smooth cut, as if done with a sharp instrument. Concede that this was done with the corner of the hatchet, and that it may have been sharp. Certainly there would have been some bruise on the skull, under the band of

the hat. The facts tend to show, with great force, that this cut in the hat was made for a purpose, namely, to support self-defense; for it was physically impossible for the deceased to have struck the defendant in the manner deposed to by Miss Knutson, without inflicting wounds or bruises. In the absence of these, it became necessary to cut the hat, or self-defense would be out of the case.

We have reread this record carefully, but find no error for which the judgment should be reversed, and it is accordingly affirmed.

*Affirmed.*

Judges all present and concurring.