JOHN ROGERS v. THE STATE.

No. 2224.    Decided April 23, 1913.

Rehearing denied June 18, 1913.

**1.—Arson—Continuance—Cumulative Evidence—Depositions.**

Where defendant's application for continuance showed a want of diligence in not taking the depositions of the absent witness, it being defendant's second application for continuance, and also showed that the absent testimony was cumulative in character, there was no error in overruling the motion.

**2.—Same—Written Statement of Defendant—Arrest—Confessions.**

Where, upon trial of arson, it appeared that defendant testified before the grand jury when he was not under arrest and there made a written statement which was not a confession under the statute when under arrest, there was no error in admitting the same in evidence, although the same did not comply with the law as to written confessions. Following Bailey v. State, 65 Texas Crim. Rep., 1, and other cases.

**3.—Same—Evidence—Insanity—Opinion of Witnesses.**

Where, upon trial of arson, defendant interposed the plea of insanity and introduced many witnesses in support thereof who testified as to their associations with defendant, etc., and then expressed their opinion, there was no error in permitting the State to introduce testimony in rebuttal and likewise permitting the State's witnesses to state their opinion that defendant was sane after detailing their dealings with him, their observation and knowledge, etc., and that they believed he knew right from wrong. Following Jordan v. State, 64 Texas Crim. Rep., 187, and other cases.

**4.—Same—Misconduct of Jury—Discretion of Court—Impeaching Verdict —Pardon.**

Where the testimony taken upon the question of the misconduct of the jury as a whole showed that the jury did not receive or consider any evidence other than that properly admitted before them on the trial, there was no error on that ground. A juror will not be permitted to impeach his verdict because the jurors had agreed to sign a recommendation for defendant's pardon. Following Montgomery v. State, 13 Texas Crim. App., 74, and other cases.

**5.—Same—Charge of Court—Charge as a Whole.**

Where, upon trial of arson, the charge of the court when taken as a whole correctly submitted all the issues raised by the evidence including that of insanity, criticisms to various phrases in this charge are hypercritical, and there is no reversible error.

**6.—Same—Charge of Court—Requested Charge.**

Where, upon trial of arson, the court fully charged on the issues raised by the evidence, and no additional charges were requested, there was no error. Following Dozier v. State, 62 Texas Crim. Rep., 258.

**7.—Same—Sufficiency of the Evidence—Sanity of Defendant.**

Where, upon trial of arson, defendant pleaded insanity, but the evidence showed that he was sane at the time of the commission of the offense, and amply sustained the verdict of conviction, there was no error.

Appeal from the District Court of Coryell. Tried below before the Hon. J. H. Arnold.

Appeal from a conviction of arson; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*T. R. Mears* and *Williams & Williams,* for appellant.—On question of confessions and statements by defendant that the same were not voluntarily made: Cook v. State, 32 Texas Crim. Rep., 27; Clayton v. State, 31 id., 489; Spencer v. State, 48 id., 580; Womack v. State, 16 Texas Crim. App., 178; Searcy v. State, 28 id., 513; Neely v. State, 27 id., 324; Weller v. State, 16 id., 200.

On question that defendant was under arrest and confessions were not conformable to statute: Fry v. State, 58 Texas Crim. Rep., 169, 124 S. W. Rep., 920; Calloway v. State, 55 Texas Crim. Rep., 262; Grimsinger v. State, 44 Texas Crim. Rep., 1; Henzen v. State, 62 id., 336; Jenkins v. State, 60 Texas Crim. Rep., 236.

On question of opinion evidence on insanity: Williams v. State, 37 Texas Crim. Rep., 348; McLeod v. State, 31 id., 331; Burton v. State, 51 id., 196; Wells v. State, 50 id., 499; Jordan v. State, 64 Texas Crim. Rep., 187, 141 S. W. Rep., 786.

On question of misconduct of juror:  12 Cyc., 679; Crawford v. State, 24 Am. Dec., 467.

*C. E. Lane,* Assistant Attorney-General, and *J. P. McLellan,* District Attorney, for the State.—On question of continuance:  Shackelford v. State, 53 S. W. Rep., 884; McKinney v. State, 8 Texas Crim. App., 626.

On question of cumulative testimony:  Fulkerson v. State, 57 Texas Crim. Rep., 80, 121 S. W. Rep., 1111; Bush v. State, 51 S. W. Rep., 238; Hooper v. State, 29 Texas Crim. App., 614.

PRENDERGAST, JUDGE.—Appellant was convicted of arson and his penalty fixed at the lowest prescribed by law,—five years in the penitentiary.

For a few years before August 27, 1911, F. B. Lam and W. L. Rogers were equal partners in two gins.  They both lived, and said gins were situated, in the town of Oglesby, Coryell County, Texas.  The gins were 150 yards apart.  It seems that Lam run one of the gins and Rogers the other.  The mother of Lam was the sister of Rogers.  Lam's father was a brother of the wife of W. L. Rogers.  Appellant was nineteen years of age in January, 1911.  His home was then and all his life had been at his father's.  His parents moved to Oglesby from a few miles in the country near thereto, some four years before August, 1911, and had lived in Oglesby four years or more continuously before said last date.  Some three weeks before August 27, 1911, Lam and Rogers had fallen out about their said partnership business.  The state of feeling between them was very bitter, each towards the other.  It all grew out of and was connected with their gin business.

On Sunday night, August 27, 1911, the said gin house, which was run by said Lam, was burned about 11 o'clock at night.  It was worth from $6000 to $8000.  The grand jury of Coryell County did not convene after said burning until January, 1912.  On January 12, 1912, the grand jury began an investigation of said burning and had a large number of witnesses summoned to appear at that time, and they did appear at that time for that purpose.  Appellant was the second witness, it seems, the grand jury had before it on that subject.  He was duly sworn and testified as any other witness.  He at first denied knowing anything about who burned the gin, or having anything to do with burning it, and denied being in the town of Oglesby at a certain well therein and seeing certain persons thereabouts, and denied several other facts, afterwards sworn to in his written statement.  The county attorney or some of the grand jurors then told him they, in effect, knew he was testifying falsely, but if he would testify truthfully they would forgive him and not prosecute him for false swearing.  Thereupon he admitted he had not been telling the truth, but would then do so.  Then testified fully.  His testimony was reduced to writing and he signed and swore to it, in addition to having been sworn and testified orally.  His written sworn statement is as follows:

"I burned the gin myself on Sunday night after church and before midnight. I burned it by pouring a gallon can of coal oil on the floor and under the second gin stand from the east end of the gin house and by throwing a lighted match on said oil. After the oil began to burn I threw the can out at the window under the suction shed and ran out through the south door straight to my horse and buggy in front of the M. E. church in Oglesby, where I got in the buggy and drove straight to Virge Lawrence's place as fast as the horse could trot. After putting up my horse and buggy I went to the house and woke up Virge Lawrence and told him the gin was on fire. (We could see the fire from his house, which was about three miles westward direction from Oglesby.) Virge and his wife, my sister, got up and dressed and went to the fire. After they left I hitched up again and went to the fire also. The gin house had fallen in when I got there. I got the can full of oil at Virge Lawrence's on the Saturday before the burning and took it to Oglesby and hid it Saturday evening between the old livery stable and the little house just east. After church Sunday night following I changed my Sunday clothes at my buggy for a blue jumper and duck pants and went down in front of the Stockberger store and to the public well of Oglesby, where I saw Leonard Stockberger, Ed Mooney, Cecil and Wood Graham and Bob Stockberger. All that was there said between us was that Leonard asked me what I was doing there, and I replied that I was waiting for 'Fatty Reid,' meaning Sam Reid. As soon as all of these boys had gotten some distance away I got the above mentioned can from the place where I hid it, went straight to the gin that was burned and set the fire that burned the gin as stated above. I decided on the Friday before that I would burn the gin on Sunday night. After I hid the can as above stated on Saturday evening I went through the gin to choose a place to set it on fire. After church the Sunday night of the fire and before I changed my clothes I told George Isbell, Jr., Reynold Bannister, and Floyd Campbell after they promised they would not tell that I was going to burn the gin. One of them told me it would be a dangerous thing to do. On the Sunday after the gin was burned I told the same boys that I had burned the gin. They were all together at the time. I burned the gin because I was mad at Frank Lam, the manager, because he would not pay me what I claimed he owed me for work I had done. This was the only reason. Nobody told me to burn the gin and I had talked with nobody about it except the three above-named boys, nor have I since told anybody that I did it except the same three boys. I alone am to blame for the burning of the gin. I make all the above statements freely and voluntarily because the same is true and with no promise on the part of any officer or any man except that of the district attorney, that if I would tell the whole truth and nothing but the truth that he would recommend leniency. I understand this can be used in evidence against me.

Johnnie Rogers."

This sworn testimony was introduced on the trial of the cause. In

addition to and independent of it, the State proved substantially and fully the same things by numerous witnesses. Some three or four witnesses testified that shortly before appellant burned this gin, he told ·them that he was going to do so and fixed said Sunday night as the time. He showed to one or more of the witnesses a can of oil that he had procured for that purpose. After the fire he admitted to three· or four witnesses that he had burned said gin and when they, together with himself, were summoned before the grand jury, and before that, too, he urged them not to give him away. In fact, the testimony without doubt and clearly established that appellant burned the gin without reference to his own written testimony. His main or sole defense was insanity.

The record in this case, as well as the statement of facts, is voluminous. We think it altogether unnecessary to further detail the testimony.

Appellant's first bill of exception is· to the action of the court in overruling his motion for a continuance. It was sought on account of the absence of appellant's mother, who lived in Coryell County, but who was temporarily absent in Waco, McLennan County, and of his sister, Mrs. Amiott, who was a resident and lived in Waco, McLennan County. There is no question but that this was appellant's second application for a continuance. He first continued the case at the January term of the Coryell County District Court. It appears that at that term both sides announced ready for trial. After proceeding with the trial for some time, a child of one of the jurors became very sick, and in accordance with the law, the court permitted that juror, in company with a deputy sheriff, to go to his home in the country and see the child. After waiting a day or two, it became evident that the juror's child was too ill for him to leave and would probably die, and perhaps did. Appellant at the time he announced ready, when the case was called, stated that one of his material witnesses was absent and that if this witness did not arrive in time to testify he would withdraw his announcement of ready and would then make application to continue on that .account. It had been some two or three days after this announcement and the proceeding to trial when this witness had still not arrived, and in the dilemma the case was in, and in order to avoid jeopardy, appellant then, with the consent of the State and court, withdrew his announcement of ready and the case was continued on his application because of the absence of said witness. This presented some equitable matter for the court to consider in the second application; but it, as stated above, was unquestionably a second application when appellant sought a continuance on account of the absence of his mother and sister. The court, in approving appellant's bill complaining of the action of the court in refusing his continuance, qualified it by stating as follows: "1. This was the defendant's second application for a continuance. 2. . As to Mrs. Rogers, defendant's mother, I have to say that this was ·the third trial of this case. This had been tried for lunacy since indictment on

complaint made by his father. At all previous trials including the lunacy trial, Mrs. Rogers, though present, did not testify as a witness. In view of such facts diligence would have required the defendant to take her depositions. 3. The doctor's certificate shows that Mrs. Amiott's affliction was also of some years standing and must therefore have been known to the defendant and his counsel and clearly suggested the advisability of taking her depositions. While she had testified at the former trials of the case, her condition, as stated by the doctor, was no worse on the morning he visited her than it had been during the years she had been suffering from the infirmity. If it was, the doctor does not say so. He says 'any undue exercise or excitement will aggravate her condition.' It occurs to the court that she could have appeared and testified without 'undue' excitement or exercise. 4. Again, the testimony was merely cumulative of that of her father, sister and brothers-in-law, who, as non-experts, gave their opinion as to the defendant's insanity. She might have stated other and different reasons for such opinion in aid of and ancillary to her opinion. For this reason I did not think the application good and for the other reasons above stated."

At most, the evidence of Mrs. Rogers and Mrs. Amiott could have been but cumulative evidence. Judge White in his Annotated C. C. P., section 1149, subdivision 6, says: "Evidence is cumulative which only multiplies witnesses as to one or more facts already investigated or only adds other circumstances of the same general character." We have considered the testimony of appellant's father, and his other two sisters, who testified, and we think it clear that the testimony of Mrs. Rogers and Mrs. Amiott would have been merely cumulative. Under the statute, a second application for a continuance is not granted as a matter of right, but is in the sound discretion of the court. Also, under the statute, after the trial it is again to be considered by him in the light of the trial, and it must not only appear that the evidence was relevant, material and probably true, but it must also appear that a different result would be probably produced. Sec. 647, White's C. C. P. In our opinion the bill, as qualified by the judge, does not show that the court committed any reversible error in refusing the continuance and in refusing a new trial on that ground.

Another bill by appellant complains that the court erred in admitting the sworn written testimony of appellant before the jury, copied above. All of his objections are based on the theory that the said written statement, or evidence, was a confession of defendant after arrest, under our statute. The court qualified appellant's bill on this subject with this explanation: "At the time defendant testified before the grand jury he was not under arrest and had no intimation or information that he would be arrested. He testified simply as any other witness. I held that under such circumstances the statute as to confessions of defendants, while in custody and under arrest, did not apply." We have carefully considered this question and it is our opinion that the court's action

and treatment of said testimony was correct. It was not a written confession as provided by our statute. Hence, the statute on that subject is inapplicable. So are all the decisions cited by appellant in his brief. Bailey v. State, 65 Texas Crim. Rep., 1, 144 S. W. Rep., 996, citing Thomas v. State, 35 Texas Crim. Rep., 178; Jones v. State, 33 Texas Crim. Rep., 7; Paris v. State, 35 Texas Crim. Rep., 82; Wisdom v. State, 42 Texas Crim. Rep., 579; Grimsinger v. State, 44 Texas Crim. Rep., 1. See also Presley v. State, 60 Texas Crim. Rep., 102, 141 S. W. Rep., 215; Harrison v. State, 153 S. W. Rep., 139; Mackey v. State, 151 S. W. Rep., 802.

As stated above appellant introduced, among other witnesses, his father, two sisters several years older than he, and his brothers-in-law, their husbands, and several other witnesses who were persons living in the same community and had lived there for many years, some or all of whom had known him all of his life and had seen him, observed him and had been about him just like persons living in the same community or little town will see, be about and communicate with others. The trend of his whole evidence was to show that appellant was almost an idiot; that he couldn't learn at school, didn't know how to add, subtract and multiply, etc., and could not be taught it, did not know how to play games, and could not be taught to play them, and many individual acts, showing a lack of mental capacity and development. He also had one doctor who testified, not only from his personal observation, but from hypothetical questions, in substance, that in his opinion he was not sane, did not know right from wrong, and was not of sufficient mental capacity to understand right and wrong and comprehend what he was doing, but that he might be mistaken on these points.

The State, in rebuttal of this testimony, introduced many of his kinsmen and women on the Lam side of the house, who had known him all of his life. They lived in the same community or town, saw him from time to time, day to day, year to year, just like intimate kinsfolk living in the same community see, be with, and observed one another. In addition to this, the State introduced many witnesses, the merchants, bankers, other business men and a considerable number of appellant's associates, about his own age, or just a little older or just a little younger, who ran with him for years and from day to day and from time to time, and they all, after telling of their observations and experiences with him, hearing him talk, seeing and knowing of his working in various capacities, many of his trades and purchases, his dealings with the bank, etc., testified in effect that they saw nothing in his acts, sayings and doings to make them believe he did not know right from wrong, etc. The character of the testimony introduced by the State was substantially that introduced by the appellant and in rebuttal thereof. Some of these witnesses for the State were permitted, after detailing their dealings with, observation and knowledge of and hearing and seeing appellant from day to day, week to week and year to year, that in their opinion he had the intelligence of an average young man

of his age; that he knew right from wrong and knew it was wrong to burn said gin, and such like expressions of opinion.

Appellant took various bills of exception to the introduction of such testimony by the State. The court permitted the testimony over appellant's objections, stating as an explanation in allowing the bills: "In the admission of testimony in this case I attempted to follow the Jordan case in 64 Texas Crim. Rep., 187, 141 S. W. Rep., 786. In view of that decision and cases there cited I feel that testimony of a witness that 'he saw nothing out of the ordinary with the defendant,' or that 'he acted rationally,' or that 'he saw nothing to indicate insanity on the part of accused,' is only a shorthand rendition of the facts. I think that the State could prove as a fact, as was done by the above witness who had had dealings with the defendant, that he saw nothing out of the ordinary with him in the trade and observed no evidence of insanity. I can not imagine how sanity could be otherwise proven." In our opinion, all of this testimony was admissible and the court properly followed the said decision in the Jordan case, and many other cases of this court along the same line. We think the testimony admitted comes clearly within said decisions and was the best possible evidence that could be introduced on the subject of sanity or insanity of the appellant. It is unnecessary to cite other authorities or to take up and discuss the evidence and the various bills on the subject.

Appellant has another bill complaining of the misconduct of the jury in receiving other evidence while they were considering their verdict. The court had all the jurors sworn and they testified. In addition to all twelve of them testifying, he heard the affidavit of the one juror whose affidavit was made the basis of said motion for new trial and the bills of exception, and also the affidavit of the other eleven on the same matter. Taking it as a whole, we think it clearly shows that the jury did not receive and did not consider any evidence other than that properly admitted before them on the trial.

The one juror upon whose affidavit said ground of the motion was based, swore and testified in substance that he would not have agreed to the verdict of guilty, unless the other eleven jurors had agreed to sign a recommendation for appellant's pardon, which they agreed to do. It has uniformly and many times been held by this court that no juror should be permitted to impeach his verdict on this account and that such ground is insufficient to authorize or require a new trial. Montgomery v. State, 13 Texas Crim. App., 74; Henry v. State, 43 S. W. Rep., 340; Bearden v. State, 47 Texas Crim. Rep., 271; Bacon v. State, 61 Texas Crim. Rep., 206.

Another ground of appellant's complaint is to the charge of the court, to some paragraphs and one claimed omission therein. In order to discuss these, we will quote the charge in full, numbering the different paragraphs. After correctly stating the charge against appellant by the indictment and his plea of not guilty, the charge is:

"1. Arson is the willful burning of a house. 2. A house is any

building, edifice or structure inclosed with walls and covered, whatever be the materials used for the building. 3. The meaning of the term willful as used in the definition of this offense, is, that the act must be committed with an evil intent, or with legal malice, or without reasonable ground for believing the act to be lawful. 4. Now if you believe from the evidence beyond a reasonable doubt that on or about the 27th day of August, A. D. 1911, in Coryell County, Texas, the defendant did then and there wilfully set fire to and burn that certain house mentioned in the indictment in this case, and that the said house was then and there the property of Lam & Rogers, a firm composed of F. B. Lam and W. L. Rogers, as alleged in the indictment, you will find the defendant guilty of arson as charged in the indictment, and assess his punishment at confinement in the penitentiary for not less than five nor more than twenty years. 5. Among other defenses made in this case is that of insanity. You are charged that only a person of sound memory and discretion can be held punishable for a crime, and that no act done in a state of insanity can be punishable as an offense. 6. Every man is presumed to be sane until the contrary appears to the jury trying him. He is presumed to entertain, until this appears, a sufficient degree of reason to be responsible for his acts; and to establish a defense on the ground of insanity it must be proved that at the time of committing the act the party accused was laboring under such defect of reason from disease of mind as not to know the nature or quality of the act he was doing; or if he did know that he did not know he was doing wrong—that is, that he did not know the difference between right and wrong as to the particular act charged against him. 7. The insanity must have existed at the very time of the commission of the offense, and the mind must have been so dethroned of reason as to deprive the person accused of a knowledge of the right and wrong as to the particular act done. 8. You are to determine from the evidence in this case the matter of insanity, it being a question of fact, controlled, as far as the law is concerned, by the instructions given you. 9. In case you find from the evidence that the defendant was insane at the time of the commission of the act, if he committed it as alleged in the indictment, and you acquit him, under the instructions heretofore given you, you will state in your verdict that you have acquitted the defendant on the ground of insanity. 10. The defendant in a criminal case is presumed to be innocent until his guilt is established by legal competent evidence beyond a reasonable doubt and in this case if you have a reasonable doubt of the defendant's guilt you will acquit him and say by your verdict not guilty. 11. You, gentlemen of the jury, are the exclusive judges of the credibility of the witnesses, of the weight to be given to the testimony and of the facts proven, but you are bound to receive the law from the court as given you in this charge and be governed thereby."

It is elementary that the charge of the court must be taken as a whole. Of course, all the law applicable to the case can not be given

in one paragraph and it takes several to give the charge in full. Appellant complains of the fourth paragraph in that it ought, at the end, to have added thereto, this: "Unless you find the defendant not guilty under other instructions herein given you." He complains of the fifth paragraph, claiming that it virtually instructed the jury that an insane person can commit crime, though he is not amenable to the law. He complains of the ninth paragraph, because the court nowhere in the charge prior to this language, instructed the jury how or under what circumstances they could acquit defendant, and claims that the charge should have stated to the jury in plain and unmistakable language that if they found defendant insane or that he was of unsound mind and unable to distinguish right from wrong, to acquit him.

We regard all these criticisms as rather hypercritical. Taking the charge as a whole, we think, without question, the jury therefrom could not have convicted the appellant,—in the first place, unless he wilfully burned the gin, and that he was sane when he did so and knew that he was doing an unlawful act. We think that it does not instruct the jury that he could commit a crime for which he was punishable while he was insane. And taking it as a whole, we think that the jury could not have understood otherwise than that if he was insane when he committed the act that they should acquit him on that ground.

Appellant requested no special charge, did not attempt thereby or otherwise during the trial to get a fuller and more pertinent charge. If the charges complained of should have been as appellant now contends "it was his duty to request additional charges," and not having done so, his criticisms present no reversible error. Dozier v. State, 62 Texas Crim. Rep., 258, and authorities therein cited.

Notwithstanding this is a voluminous record, both the record proper and the statement of facts, we have carefully considered the whole of it, and, in our opinion, it establishes clearly, not only the guilt of the appellant, but that he was sane and not insane when he committed the act.

The judgment will be affirmed.

*Affirmed.*

[Rehearing denied June 18, 1913.—Reporter.]