G. L. BARKLAY v. THE STATE.

No. 5069.    Decided June 25, 1919.

**1.—Murder—Manslaughter—Defense of Property—Charge of Court—Requested Charge.**

Where, upon trial of murder, and a conviction of manslaughter, the record on appeal failed to show that any special charge was requested to correct the supposed error of the court's failure to charge upon the lawful defense of property, the matter could not be considered on appeal under the facts of the instant case. Following Conger v. State, 63 Texas Crim. Rep., 312, and other cases, besides the evidence did not raise any such issue, and the evidence being sufficient to sustain the conviction there was not reversible error.

**2.—Same—Trespass—Charge of Court—Harmless Error.**

Where, upon trial of murder and a conviction of manslaughter, the evidence showed that the homicide grew out of ill-will by the defendant against the deceased, as to some land which deceased was plowing or attempting to plow at the time of the homicide, but the facts were not such as to raise the issue of homicide in the defense of property, there was

no reversible error in the court's failure to charge the law applicable thereto; besides, if the intrusion of deceased upon the premises of defendant aroused him to such a pitch of anger as rendered him incapable of cool reflection, and this was the cause of the homicide, defendant cannot complain as he was only found guilty of manslaughter.

### 3.—Same—Objections to Charge—Rehearing—Bill of Exceptions.

Where the bill of exceptions pointed out no specific act of the deceased to trespass on the property of the defendant, in defendant's objections to the main charge of the court, the same could not be considered on appeal; besides, if the facts in the transcript are considered no such issue was raised, and there was no error in the court's failure to submit a charge on the defense of property.

### 4.—Same—Defense of Property—Charge of Court—Rule Stated.

It must be borne in mind that the statute regulating the right of defense of property requires, in order to justify on this ground, that the accused must make every effort in his power to repel the aggression, before he would be justified in killing, and that the killing must take place while the person killed is in the very act of making the unlawful and violent trespass, and there being no such facts in the instant case, the right to take life in the defense of property did not arise. Distinguishing Woodring v. State, 30 S. W. Rep., 1060, and other cases.

### 5.—Same—Charge of Court—Self-Defense—Sufficiency of the Evidence.

Where, upon trial of murder, and a conviction of manslaughter, the court's charge submitted self-defense in a manner which fairly and fully covered all the ground made by the evidence, and the evidence was sufficient to sustain the conviction there was no reversible error.

Appeal from the District Court of Jones. Tried below before the Hon. John B. Thomas.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Jas. P. Stinson* and *E. T. Brooks,* for appellant.—Upon the question of trespass and defense of property; French v. State, 55 Texas Crim. Rep., 538, 117 S. W. Rep., 848, and cases cited in the opinion.

*E. A. Berry,* Assistant Attorney General, for the State.

LATTIMORE, JUDGE.—Appellant was convicted of manslaughter in the District Court of Jones County and his punishment fixed at two years confinement in the penitentiary.

An inspection of the record discloses that appellant was a tenant, and in 1917 cultivated twenty acres of land belonging to a Mrs. Hampton, the renting of which was attended to by Oscar Hampton, her son. The deceased was another son of said Mrs. Hampton. The killing was on October 22, 1917. Part of the land cultivated by appellant was put in maize, and part in cotton, and the crop of maize

33—T. C.

had been cut sometime before the killing, except a small portion which will be mentioned later.

On the afternoon of the killing, the deceased was drilling in wheat on the stubble land from which the maize had been cut by appellant, and appellant seeing him so doing took his gun and went out where deceased was at work. Some little time before appellant got to him, deceased turned his team and began plowing and drilling in wheat on stubble land which had been cultivated by Oscar Hampton. The two men met, or deceased was overtaken by appellant, near the end of the field and deceased was shot through the heart and killed, it appearing that deceased had gotten down from his drill and was going to appellant when shot. The spot where he was killed was three steps from where he alighted from his drill. It was further shown that deceased was unarmed. The doctor who examined his body said the gunshot wound was about the forth rib and ranged downward and inward at an angle of from forty to sixty degrees; that in tracing the course of the wound his finger slipped into the heart cavity, which was down about opposite the seventh rib. The facts, as stated above, were uncontroverted. It was also uncontroverted that where deceased had been drilling, the maize had been cut and he was not disturbing any of appellant's crop raised by him during said year. Appellant had moved off the place of Mrs. Hampton in September and was living on the Powers' place at the time of the homicide.

There were several theories contended for by the defense, namely: self-defense against an attack made by the deceased; defense of property; negligent homicide, and accidential homicide.

But two matters are argued in appellant's brief consisting of supposed errors in the charge of the court, appellant evidently being satisfied with the court's charge as presenting the other theories of the case, and there being no bill of exceptions or errors presented here complaining of the introduction of evidence or any other irregularities during the trial. Appellant strongly insists that the trial court erred, as set out in his second bill of exceptions, to-wit: Failure "to charge the jury that the defendant had had a right to act to prevent or interrupt an intrusion by the deceased upon the lawful possession of property."

An examination of the record shows that no special instruction, correcting this supposed error, was presented. Conger v. State, 63 Texas Crim. Rep., 312; Davis v. State, 63 Texas Crim. Rep., 484; Rogers v. State, 71 Texas Crim. Rep., 149; Chant v. State, 73 Texas Crim. Rep., 345. We have examined all of the authorities cited by the appellant in support of this part of his contention but find nothing in any of them giving support to the theory that a man who is plowing a stubble field in the daytime may be killed because he is a trespasser or because he was a trespasser a few moments before he was killed. Such a doctrine would be a tremendous perversion of

the justly sacred right given to every citizen to protect his property from unlawful violence. What property of appellant he could thus defend by taking human life is not shown. That deceased when shot, was not on even the stubble land which had been cultivated by appellant that year, is entirely undisputed. When asked some questions, apparently as to what interest he could claim in the stubble upon which deceased had been so drilling, appellant states "I had a little stubble. It would not amount to much. I don't know whether it would amount to as much as $2.50 worth." Appellant's rental contract, under his own interpretation of it, was to rent the land until he could make a crop and gather it. The witness Short testified that appellant asked him to see Mr. Pool, to whom the rent was to be paid, and see if Pool would allow him to cut his part of the maize and leave the rent maize standing, and he testified that appellant said to him this: "He said if they would, he would turn that part of the land back to them, or something like that." The witness Short says that he made the proposition to Mr. Pool for appellant, and that it was accepted and he so notified appellant, and he again stated that he would turn that part of the land back to them. It was also in evidence that a certain part of the maize was left standing. Mr. Pool, the party to whom the rent was to be paid, said Short came to him with the proposition and he accepted the same. The witness Goodwin said he had a conversation with appellant a short time before the killing and appellant told him that he was done gathering his crop, and as stated above, he had moved off the place and the only remaining part of his crop which was not gathered was twenty-two pounds of cotton which was shown to have been gathered after the homicide in question. We have given this record careful examination to see if there was any evidence calling for an instruction on homicide in defense of property, and have found none.

What we have just said applies in large measure to the remaining ground of appellant's contention before this court, namely, that the trial court erred: "Because the court failed to charge the jury in paragraph 8 of his main charge that the defendant would be justified in committing homicide not only in defense of his person, but in defense of his property, if in defense of his property, the deceased made an unlawful attack upon defendant, viewed from his standpoint, or was injuring or destroying defendant's property, and that the defendant then acting in his defense or in the defense of his property shot and killed the deceased." We repeat substantially what we have said, that even if deceased was trespassing when drilling in wheat on stubble land which appellant claims he had not turned back to his landlord, this would give appellant no right to kill him; but in this case it is shown by the appellant himself, as well as by the other eyewitness, the little son of the deceased, that as appellant crossed the field with his gun, coming toward the deceased, that the deceased turned his team on the land controlled by Oscar

Hampton and was drilling and plowing at a point twenty-five steps from the edge of appellant's stubble, when appellant came up to him and the shooting resulted. The measurements were made by the appellant's own witnesses, Mr. May, who testified to the distance from the edge of Barklay's land to the place where deceased was killed. There is nothing in such state of the case that could support a reasonable claim that the killing was in defense of property. If the intrusion of deceased upon the premises of appellant aroused him to such a pitch of anger as rendered him incapable of cool reflection, and this was the cause of the homicide, appellant has already received the benefit thereof at the hands of the jury, which found him guilty of manslaughter and gave him a punishment of only two years.

No error appearing in the record, the judgment of the lower court is affirmed.

*Affirmed.*

### ON REHEARING.

### June 25, 1919.

LATTIMORE, Judge.—Appellant has filed a motion for rehearing contending that this court erred in holding it incumbent upon the defendant to ask a special charge correcting a given error in the court's main charge, in addition to an exception taken to such error. We did not intend in our opinion to hold as this motion intimates we did, but fearing that our opinion lacked clarity, we will try to make it clear.

The second ground of appellant's exception to the main charge was as follows: "Because the court failed to charge the jury that the defendant had a right to act to prevent an interruption or an intrusion upon the lawful possession of property." This will at once be seen to be a very general exception, pointing out no specific act which the appellant had a right to do and no specific act which he claimed to have the right to prevent and if sufficient at all, is of such nature as to demand of us an examination of the entire evidence and the charge. We deemed it proper, in the original opinion to call attention to the fact that no special instruction with reference to this ground of error was presented to the court below, but we did not base the affirmance of the case upon such fact.

We tried to make it plain in the original opinion that under the evidence in this case, we did not think the issue of homicide in defense of property, was raised. Conceding that a man may defend his property with as much vigour as his person and that, broadly stated, the rules of self-defense are the same whether it be person or property defended, and further admitting that the amount or value of property would not affect the right to defend, it would still be

necessary that the homicide be demanded, or reasonably so, in order to prevent or stop some injury to the property of the accused; and it must be borne in mind that our statute regulating the right of defense of property, requires, in order to justify on this ground, that the accused must make every other effort in his power to repel the aggression before he would be justified in killing and that the killing must take place while the person killed is in the very act of making the unlawful and violent attack. Bearing these statutory rules in mind, if it were admitted for the sake of the argument that if deceased was plowing in stubble on land had in rental possession by the accused, and that this was such injury to property as to give rise to a right to kill in order to prevent same, it would still be true that the appellant must have used every effort in his power to repel the aggression before the killing took place, and then must have killed deceased while he was in the very act of "making such unlawful and violent attack." Appellant's own evidence and that of the son of deceased and appellant's witness May, make it evident that when appellant shot and killed, deceased had gone from the stubble land cultivated by appellant during 1917 and was then with his plow on land with which he had no connection whatever. It seems self-evident that if a man be seen injuring property of another, but desists when the owner appear and flee or go away he may not be thereafter killed under the claim of defense of property.

The authorities cited by appellant are: Woodring v. State, 30 S. W. Rep., 1060; Sims v. State, 36 S. W. Rep., 256; Hopkins v. State, 53 S. W. Rep., 621; McGlothlin v. State, 53 S. W. Rep., 871; Sims v. State, 44 S. W. Rep., 522. In deference to the insistence of able counsel for appellant we have reviewed again these authorities. In Woodring's case there is nothing to support appellant's contention. In that case the killing occurred over a fence claimed by both parties. Deceased was in the act of tearing it down and Woodring armed himself with a pistol and went and demanded that deceased desist. In a few seconds the parties were engaged in the fatal difficulty and Woodring claimed on the trial that he was attacked by deceased with a hatchet. The conviction was affirmed, this court holding that the charges given were fair and full. Sims' case 36 S. W. Rep., 256, *supra,* was also a killing over a fence. Deceased claimed that the fence of the pasture in appellant's possession was over some distance on his land and when killed was proceeding to forcibly remove the same over Sims' objection. The evidence shows that deceased had a shotgun and Sims a pistol and that deceased was in the act of pulling out the staples from said fence when Sims shot and killed him. This court held that if appellant resorted to every other means to prevent an unlawful attack on the fence and that there was no other means within his power to prevent such unlawful attack on said fence he would have the right to kill in his effort to so prevent same.

The Hopkins case, 53 S. W. 621, *supra,* was reversed solely because

the trial court refused a requested charge to the jury that deceased had no right to forcibly take or attempt to take a pistol from the possession of the accused, and if he did so accused had the right to prevent such taking, and that if in such forcible taking or attempted taking deceased believed he was in danger of serious bodily harm and, acting under this belief killed deceased, he should be acquitted. The McGlothlin case was reversed for the refusal of a similar charge. Neither of these cases are applicable. The Sims case, 44 S. W. Rep., *supra,* was a second appeal of the same case reported in 36 S. W. Rep., and presented a strong case of a killing in the actual defense of property under circumstances where no other course seemed open to appellant in order to defend his property. We observe that the facts in none of these cases are similar to the facts in the instant case and that no announcement of the legal principles there stated appears to justify appllant's contention here.

Complaint is also made in said motion that the following charge was error: "You are charged that the defendant had the right to seek the deceased in a peaceable manner for the purpose of making inquiry in regard to his drilling on the land claimed to be rented by the defendant, for the purpose of asking him to desist from such work, and also had the right to arm himself against an attack, if any, that he feared deceased might make upon him, or that he reasonably feared he might make upon him, if any." An examination of the record discloses that no exception was taken to this charge and the same presents no error.

The court's charge on the appellant's right of self-defense in the premises was as follows:

"You are charged that if you believe from the testimony that the defendant repaired to the field where the deceased was at work with a wheat drill, of which field the defendant claimed the right of possession, for the purpose of interviewing the deceased in regard to said work on said land, or for the purpose to ask him to desist from drilling or working on said land, and that the defendant had a gun in his hands, and you further believe that the deceased alighted from said drill and started or rushed towards the defendant, and you further believe by reason of any or all of said acts on the part of the deceased, or by reason of the relative sizes, ages and strength of the deceased and the defendant, or by reason of the defendant's knowledge of the character of the deceased, or by reason of any or all of said acts when taken alone or when taken in connection with any of the relevant facts and circumstances in evidence, there was created in the mind of the defendant a reasonable apprehension of serious bodily injury or fear of death at the hands of deceased, viewed from the standpoint of the defendant at the time, and you believe that the defendant acting upon such reasonable appearance of danger or fear of death or serious bodily injury at the hands of the deceased, shot and thereby killed the deceased, or if you have rea-

sonable doubt there of, you will find the defendant not guilty.'' We do not think this charge open to the criticism aimed at same and that it fairly and fully covers all the self-defense made by the evidence. We have carefully reviewed this case to ascertain if there was any failure to properly protect the rights of this appellant in the trial below, and have concluded that he received a fair and impartial trial. While the able presentation of this case enlists our admiration we cannot agree to the contentions made and the motion will be overruled.

*Overruled.*